**Robert Allen HULIT, Appellant,**

v.

**The STATE of Texas**

No. 877–97.

Court of Criminal Appeals of Texas, En Banc.

Dec. 16, 1998.

Richard Alley, Fort Worth, for appellant.

Danielle A. LeGault, Assist. DA, Fort Worth, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

WOMACK, J., delivered the opinion of the Court, in which McCORMICK, P.J., and MANSFIELD, KELLER, and HOLLAND, JJ., joined.

This case calls on us to decide whether the search and seizure provision of the Texas Constitution was violated when a peace officer went to the aid of a motorist who was unconscious in his vehicle on a public highway.

### I.

About 2:00 a.m. on April 29, 1995, Officer T.A. Page of the Benbrook Police Department was dispatched to the intersection of the westbound service road of Southwest Loop 820 and Winscott "to assist another officer on an ambulance call. A woman—it was reported that there was a woman possibly having a heart attack in a vehicle at that address." Page was the first officer to arrive. He found a pickup truck "sitting in the inside lane" of the service road, which is marked for a turn lane, about 50 feet back from the intersection. An individual with "long hair in a ponytail" was "slumped over the steering wheel. Just like he was asleep or passed out or possibly had a heart attack or something and was laying over the steering wheel." The truck's engine was running; all the windows were rolled up. There was no other traffic on the road.

Page pulled his marked vehicle around, behind the truck, and activated his emergency lights. The officer's main concerns were "emergency medical concerns at that point … to make sure he was alive and well." Like all Benbrook police officers, Page was a "first responder unit … trained in CPR and first aid." It was a philosophy of the police department to be "service-oriented" and "help the community out." Officers used "citizen assist cards" to record such activities.

Page got out of his vehicle, walked up to the truck, and started rapping on the window to try to awaken the driver, who he could now see was a man. At first the driver did not respond at all. Another officer, Doug Bird, arrived, and both officers kept rapping at the window and yelling at the driver to wake up. "He eventually woke up and pulled the handle on the door and opened the door." The driver seemed to be disoriented, and Page smelled an odor of alcohol about him. The driver said "he was okay, things like that." One of the officers asked him to step out of the vehicle, and the driver complied. As he did so, the truck, which had a standard transmission that was not in gear, began rolling backward.

The officers began an investigation for DWI. The parties stipulated that the driver was the appellant, and that at a trial the State would offer additional testimony about the investigation that the State "would not be able to elicit in fact but for the initial detention."

The appellant was indicted for the offense of driving while intoxicated which was enhanced by two previous DWI convictions. See Penal Code §§ 49.04 & 49.09(b). He filed a written motion to suppress evidence "because of the violation of the Defendant's rights against unreasonable search and seizure solely under Tex. Const. Art. I, Sec. 9, 10 and 19; and Tex.Code Crim. Proc. Ann. Arts. 1.04, 1.05, 1.06, 38.21, 38.22 and 38.23." The appellant withdrew an earlier motion which had invoked both state and federal constitutions. He told the trial court that "the Texas Constitution and law ... are the only issues that are before the Court in this motion."

The trial court denied the motion to suppress evidence after hearing the testimony and stipulations which we have summarized. The appellant waived trial by jury and pleaded guilty. The court assessed a sentence of 5 years' imprisonment, suspended for a period of 10 years, and a fine of $1,250. The sentence did not exceed the recommendation of the State, to which the appellant and his attorney had agreed. This appeal is based on the trial court's denial of the appellant's motion to suppress evidence. The Second Court of Appeals affirmed. *Hulit v. State,* 947 S.W.2d 707 (Tex.App.—Fort Worth 1997).

We granted review of the appellant's ground that the lower courts were in error "because there is no 'community caretaking function' exception to the warrant requirement under Texas law." Appellant's Petition at 4.

## II.

It is well to make clear at the start what is in issue, and what is not. The trial court ruled that the appellant was detained when the officers asked the appellant to get out of his truck. The Court of Appeals did not rule on that question of when the detention began, and we have not granted review to consider it. We shall assume, without deciding, that the appellant was seized when he was told to step out of his truck.

Nor is it an issue whether, before the point of seizure that we have identified, there was reasonable suspicion to believe that the appellant was driving while intoxicated (as the trial court ruled), or whether the seizure was based on a reasonable suspicion that a criminal offense was being committed in the officers' presence because of a violation of any section of the Traffic Code, such as those that regulate stopping and standing vehicles on streets and highways. The Court of Appeals made no decision on those issues for us to review.

The Court of Appeals clearly identified the issue as whether, "when an officer reasonably believes that the safety of an individual, or the public, is threatened, he may perform a 'community caretaking' function, unrelated to the detection or investigation of crime, by detaining the individual without a warrant." *Hulit v. State,* 947 S.W.2d at 709.

Less clear was that court's basis for resolving the issue. The Court of Appeals correctly pointed out that the appellant expressly waived any complaint under the federal constitution and statutes, and was proceeding under the Texas Constitution. *Ibid.* The Court of Appeals also criticized the appellant for erroneously summarizing one of our opinions on the state constitution, and for failing to adequately brief his state constitutional ground. *Ibid.* The Court refused to "make an argument for appellant" as to why the state constitution would provide more protection. *Id.* at 709 n. 3. And it said it would "only consider his state jurisprudential arguments." *Id.* at 709. This language could, but we think should not, be construed as saying that the Court of Appeals would not consider the appellant's state constitutional ground, and that it was resolving the case on non-constitutional state jurisprudence. There is no self-contained, common law jurisprudence of the right to be free from unlawful search and seizure. There could not be a "state jurisprudential argument" on search and seizure that is not based on some constitutional or statutory provision. We think the Court of Appeals was saying that it would interpret the Texas Constitution in light of the appellant's arguments that were based on state jurisprudence, and that it would not invent any other constitutional arguments for him.

The appellant made it very clear in the district court that he was relying solely on the state constitution and laws. In this court he has narrowed the basis of this argument to the state constitutional provision on search and seizure, summarizing his argument as, "This Court should not adopt as an exception to Tex. Const. Art. I, Section 9 the 'community caretaking' function adopted by the Court of Appeals below." Appellant's Brief at 3.

Therefore we can finally identify the precise issue that is before us: whether Article I, Section 9 of the Texas Constitution was violated by the officers' detaining the appellant without a warrant to determine if he needed first aid, a seizure which the officers made in performance of a community caretaking function, unrelated to the detection or investigation of crime.

### III.

Article I, Section 9 of the Texas Constitution recognizes the right of the people to be secure from all unreasonable seizures or searches. · To prove that his right under that section was violated, the appellant presents this argument:

> Warrantless searches are per se unreasonable unless they fall into a recognized exception to the warrant requirement. [*Harris v. United States*, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947)]. It is well settled that the exceptions to the warrant requirement require the existence of probable cause and an exigent circumstance to be valid. *Id.* The alleged "community caretaking function" requires no

such exigent circumstances or probable cause and thus is not a legitimate exception to the warrant requirement. [H]ence any arrest, search and seizure based thereon is per se unreasonable.

Appellant's Brief at 14 (citation omitted).

The first sentence of the appellant's argument makes three distinct assertions: There is a warrant requirement in the constitution; there are recognized exceptions to the warrant requirement; warrantless searches are per se unreasonable if they do not fall within a recognized exception. We need not decide at this point whether these assertions are the actual holdings of the Supreme Court in *Harris*, or whether they have been altered by the jurisprudence of the past 50 years, or even the relevance of a holding about searches in a case about seizures.[1] *Harris* is about the Fourth Amendment to the United States Constitution, and we have "expressly conclude[d] that this Court, when analyzing and interpreting Art. I, § 9, Tex. Const., will not be bound by Supreme Court decisions addressing the comparable Fourth Amendment issue." *Heitman v. State*, 815 S.W.2d 681, 690 (Tex.Cr.App.1991). To decide whether the appellant's argument is correct, we must decide whether his assertions are true for the Texas Constitution.

▮ The appellant argues that the warrant requirement of the Texas Constitution was violated when he was seized without a warrant under circumstances that did not fall within an established exception. By "the warrant requirement," he means a requirement that a seizure be authorized by a

---

1. We will note that the dissent's statement, "It is axiomatic that the Fourth Amendment's prohibition against 'unreasonable searches and seizures' is premised on the Warrant Clause" (*post* at 446), is wrong.

> The Amendment is silent as to how the Reasonableness Clause and the Warrant Clause interact with one another, nor is it clear which clause should be considered the most important. [I]n the arrest context the manner in which the Supreme Court has interpreted the relationship between the two clauses is fairly straightforward. For other searches and seizures, the Court's jurisprudence has been somewhat more difficult to pin down.
> Two competing approaches can be discerned in the Court's cases. The first [like the dis-

sent's] assumes that the Warrant Clause is the predominant clause ....

> However, there is a competing perspective on the Fourth Amendment which, in practice if not in theory, seems to have gained the ascendancy. As summarized by the Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a case decided one year after *Katz* [which the dissents cites], "the central inquiry under the Fourth Amendment (is) the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security. ...
> Both approaches have been adopted in Supreme Court opinions."

Charles H. Whitebread & Christopher Slobogin, CRIMINAL PROCEDURE 129–30 (3d ed. 1993).

warrant, in the absence of which the seizure would be unlawful even if it were otherwise reasonable. Is there such a requirement in Article I, Section 9 of the Texas Constitution? We shall examine the text of the Constitution, refer to our prior decisions, consider the history of the common law, and consider Fourth Amendment jurisprudence.

Article I, Section 9 reads:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

Section 9, like the Fourth Amendment,[2] comprises two, independent clauses. The first recognizes the right to be free from unreasonable seizures or searches. The second imposes limits on warrants. Neither clause requires a warrant or even authorizes a warrant. The warrant clause does not say when a warrant must issue, or when it may issue; it says only when warrants may not issue. It is cast in the negative ("*no* warrant ... shall issue"). And even if a warrant met the minimum requirements of the warrant clause (description, probable cause, and affidavit), the warrant still would be unlawful if the seizure or search that it authorized were unreasonable. The natural reading of Section 9 does not support the appellant's assertion that it requires a warrant for a reasonable seizure.

In our prior decisions, we have not found a warrant requirement in Article I, Section 9. In finding constitutional a statute which required common carriers to allow peace officers to inspect their records of shipments of intoxicating liquors, this Court pointed out, "It is not every search that our Constitution inhibits. It is only *unreasonable* searches. In our opinion that provision of our Bill of

Rights prohibiting unreasonable seizures and searches, if it has any application whatever to the statute in question in this case, has in no way been violated, and said act of the Legislature is, in our opinion, in every way valid and constitutional." *Hughes v. State*, 67 Tex. Cr. 333, 351, 149 S.W. 173, 184 (1912). Therefore the warrant clause in Section 9 does not mean that a warrant is indispensable to a valid search and seizure. A.J. Thomas and Ann Van Wynen Thomas, "Interpretive Commentary," 1 *Vernon's Annotated Texas Constitution* 438 (1997).

Historical considerations give no support to the contention that the Texas Constitution imposes a general requirement of a warrant to seize a person. At common law, seizure of a person (that is, arrest) was permitted when an officer had probable cause to believe that the person was committing, or had committed, a felony, or that the person was committing a misdemeanor involving a breach of the peace in the officer's presence. *See Carroll v. United States*, 267 U.S. 132, 156–57, 45 S.Ct. 280, 69 L.Ed. 543 (1925). The arrest statutes of Texas follow the common law pattern, except that they expand the officer's authority by permitting warrantless arrest for any misdemeanor committed in the officer's presence regardless of whether it involves a breach of the peace,[3] and for certain misdemeanors that are not committed in the officer's presence.[4]

■ We have recognized that, because of the similarities of the search and seizure provisions in the state and federal constitutions, United States Supreme Court cases may be permissive authority in interpreting the Texas Constitution. *See Heitman v. State*, 815 S.W.2d at 690 n. 22. But we do not find persuasive the appellant's citation of Fourth Amendment law from the Supreme Court on this subject. First, the holding that the Fourth Amendment requires a war-

---

2. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

3. See Tex.Code Crim. Proc. art. 14.01. In this regard Texas law is like the laws of most American jurisdictions. *See* Charles H. Whitebread and Christopher Slobogin, Criminal Procedure 86 n.73 (1993).

4. See Tex.Code Crim. Proc. art. 14.03(a).

rant is, as the appellant's brief says, a requirement for searches. The Fourth Amendment does not require a warrant for a seizure of a person that does not involve an intrusion into a home. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). *Cf. Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

Second, although the Supreme Court has frequently said that the Fourth Amendment imposes a general warrant requirement for searches,[5] these statements have often been followed by the Court's statements that the central inquiry under the Fourth Amendment is the reasonableness of the search or seizure under the totality of the circumstances.[6] It is the latter approach which we find consistent with the language of Article I, Section 9 of the Texas Constitution.

Third, historical research indicates that the Framers' primary, if not sole, concern in drafting the Fourth Amendment was avoiding a repetition of the British colonial practice of issuing general warrants or warrants based on bare suspicion.[7] Such warrants were doubly pernicious because they not only authorized intrusions on the privacy of the colonists, they prevented civil redress by shielding the executing officers from civil liability.[8] Supreme Court cases which have held that the Fourth Amendment was intended to impose a warrant requirement are not well founded in historical fact. Insofar as Article I, Section 9 of the Texas Constitution was directed at preventing the same evil that the Fourth Amendment was intended to prevent, the history of the Fourth Amendment informs our interpretation of its meaning.

Fourth, by finding a general requirement of a warrant to which there are exceptions, the Supreme Court has created a jurisprudential mare's nest.[9] There are so many exceptions to the warrant requirement that most searches and seizures are conducted without warrants and justified under one of the exceptions. Such a model of the Fourth Amendment not only makes a mockery of the supposed requirement, it interferes with a more fine-tuned assessment of the competing interests at stake.[10] For these reasons we find the Supreme Court's statements about a warrant requirement unpersuasive.

It is our holding that Article I, Section 9 of the Texas Constitution contains no requirement that a seizure or search be authorized by a warrant, and that a seizure or search that is otherwise reasonable will not be found to be in violation of that section because it was not authorized by a warrant.

This is not to say that statutes which require warrants for seizure or search may be ignored. Nor do we say that the issuance of a warrant by a neutral magistrate may not be a factor in the totality of circumstances by which we judge whether a seizure or search was reasonable.

■ We understand that our holding means that Section 9 of our Bill of Rights does not offer greater protection to the individual than the Fourth Amendment to the United States Constitution, and it may offer less protection. But our holding is the construction that is faithful to the Constitution which our people have adopted, and it is our duty to interpret that Constitution indepen-

---

**5.** *E.g., Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (opinion of Stewart, J.). *See Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

**6.** *E.g., Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *See United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

**7.** Charles H. Whitebread & Christopher Slobogin, CRIMINAL PROCEDURE 130 (3d. ed 1993) ("There is considerable historical support ...."); Akhil Reed Amar, THE CONSTITUTION AND CRIMINAL PROCEDURE 10–13 (1997); Telford Taylor, TWO STUDIES IN CONSTITUTIONAL INTERPRETATION 41 (1969) ("[O]ur

constitutional fathers were not concerned about warrantless searches, but about overreaching warrants").

**8.** Amar, *supra* n. 7, at 13–16.

**9.** Craig Bradley, *Two Models of the Fourth Amendment*, 83 MICH. L. REV. 1468, 1475 (1985) ("By its continued adherence to the warrant requirement in theory, though not in fact, the Court has sown massive confusion among the police and lower courts").

**10.** See Whitebread and Slobogin, *supra* n. 2, at 130.

dent of the interpretations of federal courts. *Heitman v. State, supra.*

■ As the Court of Appeals noted in this case, *Heitman* does not mean that the Texas Constitution cannot be interpreted to give less protection than the federal constitution. It only means that the Texas Constitution will be interpreted independently. *See Hulit v. State,* 947 S.W.2d at 709. Its protections may be lesser, greater, or the same as those of the federal constitution.[11]

In *Heitman,* we repeated the dictum of our sister court: "The federal constitution sets the floor for individual rights; state constitutions establish the ceiling." *LeCroy v. Hanlon,* 713 S.W.2d 335, 338 (Tex.Sup. 1986). With all respect to our Sister Court, we think its metaphor is wrong. The state constitution and the federal constitution are not parts of one legal building; each is its own structure. Their shapes may be different, as may their parts. Each may shield rights that the other does not. The ceiling of one may be lower than the floor of the other. Because of the Supremacy Clause of the United States Constitution, a defendant who is entitled to claim a the protection of a federal provision may receive a greater protection from that floor than the greatest protection that the ceiling of the Texas Constitution would give him. But that does not mean that the Texas Constitution has no ceilings that are lower than those of the federal constitution. *See Welchek v. State,* 93 Tex. Cr. 271, 247 S.W. 524 (1922) (Article I, Section 9 creates no exclusionary rule similar to that found in Fourth Amendment for federal prosecutions).

In our holding there is no violation of the Supremacy Clause of Article VI of the United States Constitution.

> State courts are the final interpreters of state law even though their actions are reviewable under the federal constitution, treaties, or laws. The supreme court of a state is truly the highest court in terms of this body of law and it is not a "lower court" even in relation to the Supreme Court of the United States. It must follow the Supreme Court's rulings on the meaning of the Constitution of the United States or federal law, but it is free to interpret state laws or the state constitution in any way that does not violate principles of federal law.

John E. Nowak, Ronald D. Rotunda, J. Nelson Young, 1 Treatise on Constitutional Law 31 (1986). We do not make any holding about the appellant's rights under federal law.[12] In this case, the appellant has chosen not to seek any shelter in the federal constitution. (In our architectural metaphor, he may not be able to fit his facts under the federal ceiling.) This case has called on us to decide whether our constitution will give him the shelter he wants. It does not.

■ The Supremacy Clause means that, in practical terms, persons will always be able to avail themselves of the greater right. This is very important to litigants and their counsel, who are naturally and properly result-oriented. But it does not mean that a court, faithfully interpreting state laws, can only find in them protections that equal or exceed federal laws.

11. The dissent is mistaken in saying that this court cannot interpret our state constitution as affording less protection than the federal constitution. *See post* at 444–445. As a distinguished state jurist and leader of the new federalism said, "The right question, is not whether a state's guarantee is the same as or broader than its federal counterpart as interpreted by the Supreme Court. The right question is what the state's guarantee means and how it applies to the case at hand. The answer may turn out the same as it would under federal law. The state's law may prove to be more protective than federal law. The state law also may be less protective. In that case the court must go on to decide the claim under federal law, assuming it has been raised." Hans A. Linde, *E Pluribus—Constitu-*

*tional Theory and State Courts,* 18 Ga. L. Rev. 165, 179 (1984).

12. The dissent cites *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819). *Post* at 444. As we know, Maryland's law taxing a federal bank was held to be unconstitutional. But the state law we are construing is not violating federal law. Texas' search and seizure provision is not taking away the appellant's rights under the Fourth Amendment. It simply offers different, and parallel, rights to the appellant, who is free to invoke whichever right is greater. It is as though the United States law and Maryland law taxed banks which, if they were federally chartered, could choose to pay whichever tax was lower.

We find that the police officers acted reasonably when they approached the vehicle in which the appellant was slumped unconscious on a public highway, awakened the appellant, and asked him to step out so they could see if he was in need of assistance. We hold that Article I, Section 9 of the Texas Constitution was not violated by their actions. We do this, not by finding that there is a community care-taking exception to a warrant requirement, but by asking whether, from the totality of the circumstances, after considering the public and private interests that are at stake, their action was an unreasonable seizure. It was not.

The judgment of the Court of Appeals is affirmed.

McCORMICK, P.J., filed a concurring opinion.

MEYERS, J., filed a concurring opinion.

KELLER, J., filed a concurring opinion, in which McCORMICK, P.J., joined.

PRICE, J., filed a concurring opinion, in which MEYERS, J., joined.

BAIRD, J., filed a dissenting opinion, in which OVERSTREET, J., joined.

McCORMICK, Presiding Judge, concurring.

I join the Court's opinion and Judge Keller's concurring opinion. I file this short concurrence to respond to a misconception at work in Judge Baird's dissenting opinion. This dissenting opinion claims my dissenting opinion in *Bauder v. State* took the position that this Court is not "free to interpret our Constitution as providing less protection."[1] This is incorrect.[2]

MEYERS, Justice, concurring.

Our precedents and those of the United States Supreme Court are replete with examples of constitutionally permissible police intrusions which do not depend for their reasonableness on a law enforcement motive. Firemen, police officers, and other public officials may enter buildings to save lives, prevent personal injury, or stop the destruction of private property. *Mincey v. Arizona*, 437 U.S. 385, 392–93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Janicek v. State*, 634 S.W.2d 687 (Tex.Crim.App.1982); *Bray v. State*, 597 S.W.2d 763 (Tex.Crim.App.1980). They may take possession of private property left in public places if it poses a threat of injury or causes inconvenience to other citizens. They may inspect and catalog seized property to assure its safe-keeping and to protect themselves from claims of misconduct. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Delgado v. State*, 718 S.W.2d 718, 721–22 (Tex.Crim.App. 1986). They may examine the premises of private businessmen to ensure compliance with public health and safety regulations. None of these governmental intrusions is made primarily for the purpose of enforcing penal statutes, yet all are considered to be reasonable for Fourth Amendment purposes when undertaken in a reasonable manner. Clearly, the constitutional propriety of a search or seizure does not depend upon suspicion of a crime. The legitimate role of government in our society includes more than just the enforcement of its penal statutes.

I would emphasize that the right of the people to be free, except under extraordinary circumstances, from official intrusions into their personal lives and from official interruptions of their free movement in society is fundamental to our form of government and to our way of life. Under no circumstances should a search or seizure be considered

---

**1.** See *Hulit v. State*, 982 S.W.2d 431, 435 (Tex. Cr.App.1998) (Baird, J., dissenting) citing *Bauder v. State*, 921 S.W.2d 696, 706–07 (Tex.Cr.App. 1996) (McCormick, P.J., dissenting).

**2.** See *Bauder*, 921 S.W.2d at 706 fn. 5 (McCormick, P.J., dissenting) (Texas' double jeopardy

constitutional provision actually provides *less* protection than its federal counterpart), and at 703 (Maloney, J., concurring) (pointing out that my dissenting opinion in *Bauder* "interprets Article 1, Section 14 as being narrower than the double jeopardy provision of the Fifth Amendment").

reasonable unless the reason for it is of such social importance that it outweighs the degree of individual embarrassment or inconvenience likely to result. *Camara v. Municipal Court,* 387 U.S. 523, 536–37, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Bray,* 597 S.W.2d at 769. This is a balancing test. It is not a bright-line rule for each conceivable set of facts to which it applies. But it does set a standard to be observed by all agents of the government, including law enforcement officers and the courts responsible for overseeing the legality of their conduct.

With these comments, I join Judge Price's concurring opinion.

KELLER, Justice, concurring.

I join the majority opinion but write separately to respond to the criticisms advanced in Judge Baird's dissenting opinion. Judge Baird contends that the majority misinterprets the Fourth Amendment, but the Fourth Amendment is not an issue in this case, and the majority opinion does not purport to interpret that Amendment. Appellant has relied *solely* upon Article I § 9 before the trial court, the Court of Appeals, and now upon Petition for Discretionary Review. This is simply not a Fourth Amendment case.

But the dissent attempts to make this a Fourth Amendment case. He contends that this Court violates the Supremacy Clause when we interpret Article I § 9 of the Texas Constitution as conferring *less* protection than the Fourth Amendment to the United States Constitution. The dissent's contention is flawed for several reasons.

First, this Court has long recognized its ability to interpret the state constitution as providing less protection than its federal counterpart. Long ago, we held that Article I § 9—unlike the Fourth Amendment—contains no exclusionary rule. *Welchek v. State,* 93 Tex.Crim. 271, 247 S.W. 524, 529 (Tex. Crim.App.1922). In so doing, we found that Article I § 9 conferred less protection than its federal counterpart. *Welchek,* 247 S.W. at 528–529. Of course, *Welchek* preceded the Supreme Court's application of the Fourth Amendment to the States in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081

(1961). Nevertheless, we have reaffirmed the continuing vitality of *Welchek,* along with our prerogative to interpret Article I § 9 independent from the Fourth Amendment even when an independent interpretation would lead to a conclusion that the Texas constitutional provision confers *less* protection. *Richardson v. State,* 865 S.W.2d 944 (Tex.Crim.App.1993): "Even if the language of Article I § 9 were identical to that of the Fourth Amendment, we must construe that language according to our own lights." *Id.* at 948. That quotation is immediately followed by a footnote explaining our holding in *Welchek,* finding that Article I § 9, *unlike the Fourth Amendment,* "embodies no exclusionary rule." *Id.* at 948 n. 3 (emphasis mine).

In his concurring opinion in *Bauder v. State,* 921 S.W.2d 696 (Tex.Crim.App.1996), Judge Clinton argued that the state double jeopardy provision conferred more protection than its federal counterpart. In so arguing, he emphasized that independent interpretation of state constitutional provisions is a two-way street, and that this Court can and has interpreted provisions of the state constitution (specifically Article I § 9) as conferring *less* protection than their federal counterparts:

> We are, in fact, free to disagree with the Supreme Court when it comes to finding less protection in our state constitution. We have held, for instance, that, unlike the Fourth Amendment, Article I § 9 brooks no exclusionary rule. A claim of illegal search or seizure brought only under Article I § 9 would avail the criminal defendant of nothing at all were it not for Article 38.23 of the Code of Criminal Procedure, our statutory exclusionary rule. For this reason a defendant is likely to invoke the Fourth Amendment under the incorporation doctrine of the Fourteenth Amendment. But that would not negate the fact that Article I § 9 of the Texas Constitution is less protective—and nobody, including the United States Supreme Court can tell this Court otherwise.

*Bauder,* 921 S.W.2d at 700 (Clinton, J. concurring)(brackets, quotation marks and citations omitted).

Second, the dissent confuses two distinct concepts: (1) the possession of fewer rights by a state's citizenry than the United States Constitution confers, and (2) the recognition that a state constitutional provision confers less protection than a counterpart federal constitutional provision. Concept (1) violates the Supremacy Clause but concept (2) does not. Citizens must possess the rights guaranteed by the United States Constitution, but the state constitution is not (and need not be) the vehicle for conferring those rights. Instead, the United States Constitution itself confers those protections upon a state's citizenry. This point is illustrated by the Oregon Supreme Court in its remand opinion from the Supreme Court decision in *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982):

> The state argues, correctly, that diversity does not necessarily mean that state constitutional guarantees always are more stringent than decisions of the Supreme Court under their federal counterparts. A state's view of its own guarantee may indeed be less stringent, in which case the state remains bound by whatever is the contemporary federal rule. Or it may be the same as the federal rule at the time of the state court's decision, which of course does not prevent that the state's guarantee will again differ when the United States Supreme Court revises its interpretation of the federal counterpart. The point is not that a state's constitutional guarantees are more or less protective in particular applications, but that they were meant to be and remain genuine independent guarantees against misuse of the state's governmental powers, truly independent of the rising and falling tides of federal case law both in method and in specifics.

*State v. Kennedy*, 295 Or. 260, 666 P.2d 1316, 1323 (Or.1983).[1]

Finally, the dissent overlooks the fact that most rights are those that must be implemented upon request:

> The system of adjudication at work in Texas, and generally throughout the United States, is chiefly characterized by an array of rules which are optional with the litigants. This is consistent with an adversarial process in which the trial judge, as institutional referee, enforces rules of contention only when asked to do so by a litigant for whose benefit the rule exists. For example, evidence of a certain kind, such as hearsay, might be excluded upon request of a party to the lawsuit. The trial judge has no duty to exclude it on his own, and would probably fall into error if he did. Once admitted without objection, such evidence enjoys a status equal to that of all other admissible evidence.

*Marin v. State*, 851 S.W.2d 275, 278 (Tex.Crim.App.1993) (citation omitted). "All but the most fundamental rights are thought to be forfeited if not insisted upon by the party to whom they belong." *Id.* at 279. Forfeitable rights include many of constitutional origin. *Id.* And Fourth Amendment claims fall within the type of claims that are forfeited unless a party timely requests the constitutional protections involved. *Little v. State*, 758 S.W.2d 551, 564 (Tex.Crim.App.1988).

The appellant in the present case could have invoked the protections of the Fourth Amendment by request. Having requested protection only under Article I § 9, however, appellant forfeited any protections he was entitled to under the Fourth Amendment. The Fourth Amendment protections were available; appellant simply chose not to avail himself of them. The State of Texas is not obligated to offer those same protections in its own constitution.

McCORMICK, P.J., joins

1. The dissent cites the Supreme Court's decision in *Oregon v. Kennedy* as support for his position that the Supremacy Clause prevents a state from interpreting its own constitution in a less protective manner than the United States Constitution. Not only is there nothing in the text of that opinion to support the dissent's position, *see generally Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416, but the above quotation also shows that the Oregon Supreme Court, on remand of that very case, did not share the dissent's interpretation of the United States Supreme Court's opinion.

PRICE, Justice, concurring.

I concur only in the judgment of the majority.

The majority indicates that it is now interpreting Article I, § 9 of the Texas Constitution to provide less protection to the citizens of Texas than does the Fourth Amendment of the United States Constitution. Certainly, as a matter of interpretation, a state court is free to interpret its constitution as it sees fit. The practical result of this (and what our "Sister Court" obviously meant when it stated that the federal constitution sets the floor for individual rights, and state constitutions establish the ceiling, *see ante* at 437) is that if its interpretation gives greater protection to its citizens than does the federal constitution, then as a matter of federalism, its citizens get that greater protection;[1] and to the extent that its interpretation gives less protec-

tion to its citizens than does the federal constitution, its citizens still get the greater protection of the federal constitution.[2] Of course, if a state gives less protection to its citizens than does the federal constitution, then a defendant normally must <u>ask</u> for that greater federal protection in order to get it.

The majority finds that appellant in the instant case does not get the greater protection of the federal constitution because he has not asked for it; instead, he has only asked for protection under the state constitution. *Ante*, at 433–434, 437. What the majority fails to recognize, however, is *why* appellant has done this. For more than fifty years now, this Court has repeatedly stated that the "search and seizure" provision of the Texas Constitution gives the citizens of Texas the same protection as the Fourth Amendment,[3] and that it may give them greater

1. *See, e.g., PruneYard Shopping Ctr. v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980) (citing *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)); *Connecticut v. Johnson,* 460 U.S. 73, 81 n. 9, 103 S.Ct. 969, 974 n. 9, 74 L.Ed.2d 823 (1983) (plurality opinion) (citing *PruneYard Shopping Ctr. v. Robins, Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) & *Cooper v. California*); *Michigan v. Mosley,* 423 U.S. 96, 120, 96 S.Ct. 321, 334, 46 L.Ed.2d 313 (1975) (Brennan, J., dissenting, joined by Marshall, J.) (citing *Oregon v. Hass, Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) & *Cooper v. California*); *United States v. Cella,* 568 F.2d 1266, 1279 n. 9 (9th Cir.1977) (citing *Cooper v. California*); *United States v. Valenzuela,* 546 F.2d 273, 275 (9th Cir.1975) (citing *Cooper v. California & People v. Brisendine,* 13 Cal.3d 528, 119 Cal.Rptr. 315, 531 P.2d 1099 (Cal.1975)); *United States v. Hall,* 543 F.2d 1229, 1246 n. 17 (9th Cir.1976) (Duniway, J., concurring) (citing *Cooper v. California*), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977); *United States v. Geller,* 560 F.Supp. 1309, 1314 (E.D.Pa. 1983) (citing *Cooper v. California, PruneYard Shopping Ctr. v. Robins, Oregon v. Hass & Davis v. Bd. Of Medical Examiners*), *aff'd sub nom. United States v. DeMaise,* 745 F.2d 49 (3rd Cir. 1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Bower v. State,* 769 S.W.2d 887, 903 (Tex.Crim.App.1989) (citing *Cooper v. California); Milton v. State,* 549 S.W.2d 190, 192 (Tex.Crim.App.1977) (citing *Oregon v. Hass, Cooper v. California, Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)* & *People v. Hoinville,* 191 Colo. 357, 553 P.2d 777 (Colo.1976)); *Crittenden v. State,* 899 S.W.2d 668, 676 (Tex.Crim.App.1995) (Baird, J., dissenting) (citing *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991), *PruneYard Shopping Center*

*v. Robins & Cooper v. California*); *Gillett v. State,* 588 S.W.2d 361, 367 (Tex.Crim.App.1979) (Roberts, J., dissenting, joined by Phillips and Clinton, JJ.) (citing *Cooper v. California, Milton v. State,* 549 S.W.2d 190 (Tex.Crim.App.1977) & *Olson v. State,* 484 S.W.2d 756 (Tex.Crim.App.1972)); *Reeves v. State,* 969 S.W.2d 471, 484 (Tex.App.-Waco 1998, no pet. h.) (citing *Oregon v. Hass, Cooper v. California & Sibron v. New York*); *Jones v. State,* 867 S.W.2d 63, 65 (Tex.App.-Corpus Christi 1993, pet. ref'd) (citing *Cooper v. California & Heitman v. State*); *State v. Engelking,* 771 S.W.2d 213, 218 (Tex.App.-Houston [1st Dist.] 1989) (Dunn, J., dissenting) (citing *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), *Oregon v. Hass & Cooper v. California*), *rev'd,* 817 S.W.2d 64 (Tex.Crim.App.1991).

2. *See, e.g., Davis v. Bd. Of Medical Examiners,* 497 F.Supp. 525, 528 (D.N.J.1980) (citing *PruneYard Shopping Ctr. v. Robins & Cooper v. California*); *Autran v. State,* 887 S.W.2d 31, 36 (Tex. Crim.App.1994) (plurality opinion) (citing *PruneYard Shopping Center v. Robins, Oregon v. Hass, Cooper v. California & Heitman v. State*); *Kann v. State,* 694 S.W.2d 156, 159 (Tex.App.-Dallas 1985, pet. ref'd) (citing *Cooper v. California*).

3. *See, e.g., Johnson v. State,* 803 S.W.2d 272, 288 (Tex.Crim.App.1990) (citing *Eisenhauer v. State,* 754 S.W.2d 159 (Tex.Crim.App.1988), for proposition that Article I, § 9 of the Texas Constitution and the Fourth Amendment of the Federal Constitution are "in all material aspects the same"), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991); *Gordon v. State,* 801 S.W.2d 899, 912 (Tex.Crim.App.1990) (plurality opinion) (citing *Eisenhauer v. State & Osban v. State,* 726 S.W.2d 107 (Tex.Crim.App.1986), and

protection.[4] Clearly, appellant asked for protection only under the Texas Constitution because, relying on our case law of more than fifty years, he reasonably believed that he would get at least the same amount of protection as that granted by the federal constitution, and perhaps even more. To now "pull the rug out" from under appellant and say that he gets <u>less</u> protection than that granted by the federal constitution may itself present some serious constitutional questions. See *Ex parte Ramos*, 977 S.W.2d 616, 616–617 (Tex.Crim.App.1998) (Relying on TEX.CONST. art. I, § 19 to hold that literal application of TEX.CODE CRIM.PROC. art. 11.071 to applicant would deny him "due course of the law of the land").

Nevertheless, I concur in the judgment of the majority, based on precedent, as well as on the ground for review actually granted by this Court. In affirming appellant's conviction, the Court of Appeals held that a stop is permissible when the officer has an objectively reasonable basis for believing that the motorist posed a danger to himself or the public, or was otherwise in need of immediate assistance. *Hulit v. State*, 947 S.W.2d 707, 711 (Tex.App.—Fort Worth 1997, pet. granted). Noting that the touchstone of the Fourth Amendment and, by implication, Art. I, § 9 of the Texas Constitution, is reason-

ableness, the court relied on several cases to find that the community caretaking duty of police officers is a reasonable exception to the warrant requirement of the Texas Constitution.[5] *Id.* at 710–711. Applying that standard to Appellant's case, the court determined that the brief, warrantless intrusion by Officer Page was reasonable. *Id.* at 711. Based on the information Page had, along with his observations, Page could reasonably assume that Appellant had a medical problem and needed immediate assistance. *Id.* I agree.

Article I, § 9 states:

The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

The Fourth Amendment similarly provides that people have a right to be secure against unreasonable searches and seizures. Generally, warrantless searches are per se unreasonable. However, some exceptions to the warrant requirement are recognized. The cornerstone to these exceptions is that the

---

stating that "... where the federal and state constitutional provisions are in all material aspects the same, this Court is free to 'follow the lead' of the Supreme Court where the position has a logical and equitable basis and it appears our own state interests will also be served ..." and therefore adopting for purposes of Article I, § 9, a standard enunciated in federal case law); *Bower v. State*, 769 S.W.2d 887, 903 (Tex.Cr.App. 1989) (plurality opinion) (following *Brown v. State*, 657 S.W.2d 797 (Tex.Crim.App.1983), and holding that Art. I, § 9 is to be interpreted with the Supreme Court's opinions interpreting the Fourth Amendment), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989); *Eisenhauer v. State*, 754 S.W.2d 159, 164–165 (Tex. Crim.App.1988) (plurality opinion) (relying on federal precedent in holding that a "totality of the circumstances" test was applicable in determining probable cause for a warrantless search, and stating that "... today's opinion is made to stay in step with the federal constitutional model for probable cause determinations"), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988); *Osban v. State*, 726 S.W.2d 107, 111 (Tex.Crim.App.1986) (citing *Brown v. State* and relying on federal precedent in holding that a

search was justified); *Ward v. State*, 659 S.W.2d 643, 646 (Tex.Crim.App.1983) (relying on federal precedent and holding that an inventory search was in violation of neither the United States or Texas Constitutions); *Brown v. State*, 657 S.W.2d 797, 799 (Tex.Crim.App.1983) (plurality opinion) ("[For] almost forty years ... this Court has opted to interpret our Constitution in harmony with the Supreme Court's opinions interpreting the Fourth Amendment. We shall continue on this path until such time as we are statutorily or constitutionally mandated to do otherwise"); *Crowell v. State*, 147 Tex.Crim. 299, 180 S.W.2d 343, 346 (Tex.Crim.App.1944) ("Art. I, Sec. 9, of the Constitution of this State, and the 4th Amendment to the Federal Constitution are, in all material aspects, the same").

4. *Heitman v. State*, 815 S.W.2d 681 ( Tex.Crim. App.1991); *Autran v. State*, 887 S.W.2d 31 (Tex. Crim.App.1994) (plurality opinion).

5. *Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *Brimage v. State*, 918 S.W.2d 466 (Tex.Crim.App.1996); *McDonald v. State*, 759 S.W.2d 784 (Tex.App.-Fort Worth 1988, no pet.).

police actions must meet the reasonableness requirement of the Constitutions.

Appellant contends that without reasonable suspicion that a crime has been committed or is about to be committed, police may not validly stop or detain a motorist. This contention is untenable in light of community expectations of the role of police officers and the frequency with which police are involved in non-criminal interaction concerning traffic regulation and investigation of accidents. The United States Supreme Court discussed the frequent contact which occurs between police and motorists, noting that because of the extensive regulation of motor vehicles and traffic and the frequency with which a vehicle can become disabled or involved in an accident on public highways, police officers and motorists are often in contact for reasons unrelated to crime. *Dombrowski*, 413 U.S. at 441, 93 S.Ct. at 2528. Thus, police often "engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* Indeed, citizens expect police officers who patrol the highways and streets to assist them, if necessary, as part of the duty to serve and protect the public.

In *Brimage*, this Court recognized and approved a community caretaking exception to the warrant requirement of the Texas and United States Constitutions in a slightly different, but analogous context, known as the emergency doctrine. *Brimage*, 918 S.W.2d at 500–501. We determined that the warrantless entry of the defendant's house was lawful because information learned by police showed that a missing woman might be located inside the defendant's house. *Id.* at 501–503. We held that based on information they had gathered, the police reasonably could conclude that an emergency existed because there was a reasonable possibility the missing woman was injured, in need of assistance, and possibly located somewhere inside the house. *Id.* at 502–503.

The emergency doctrine is most typically applied to buildings, such as houses or other private premises. The community caretaking exception applicable to this case is generally applied to vehicles and situations involving motorists. Both exceptions are rooted in a foundation of reasonableness and an understanding of the duty and role of the police in protecting individuals and the general public in non-criminal situations. *See* 3 Wayne R. LaFave, SEARCH AND SEIZURE §§ 6.6 & 7.4 (3rd ed.1996).

In this case, the Court of Appeals was correct in holding that the officer's actions should be evaluated under an objectively reasonable standard of review. *See Crittenden v. State*, 899 S.W.2d 668 (Tex.Crim.App.1995) (adopting objective test for evaluating legal basis for police stop of vehicle under Art. I, § 9). A detention or stop is constitutionally permissible when the officer has an objectively reasonable basis for believing there is an immediate need for police assistance. Thus, in this case, the appropriate standard of review as to whether Officer Page had an objectively reasonable basis for believing Appellant needed help and/or posed a danger to himself or the public is *de novo*. *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App.1997).

The undisputed facts show that Page acted reasonably in approaching Appellant's vehicle and determining whether Appellant was in need of assistance. Page responded to a radio dispatch of a possible heart attack victim in a vehicle. He saw Appellant slumped over the steering wheel, and initially unresponsive in a vehicle on a public highway with the engine running. Page reasonably continued to inquire into the situation, concerned that a medical emergency might exist. Viewing these actions under an objectively reasonable standard, Page acted properly. After Appellant opened the door, Page smelled the strong odor of alcohol and then properly investigated further. These facts demonstrate that the warrantless intrusion by Page was an objectively reasonable exercise of his community caretaking function.

For the foregoing reasons, I concur only in the judgment of the majority.

MEYERS, J., joins.

BAIRD, J., delivered a dissenting opinion, joined by OVERSTREET, J.

We granted review to determine whether, under Article I, § 9 of the Texas Constitu-

tion, there is a "community care-taking function" exception to the warrant requirement.[1] Without addressing appellant's specific ground for review, the majority holds:

> ... Article I, Section 9 of the Texas Constitution was not violated by their [the police officers'] actions. We do this, not by finding that there is a community care-taking exception to a warrant requirement, but by asking whether, from the totality of the circumstances, after considering the public and private interests that are at stake, their action was an unreasonable seizure. It is not.

*Ante* at 437. The majority disregards the Supremacy Clause, the Fourth Amendment of the United States Constitution, and Supreme Court precedent to hold there is no actual warrant requirement under the Texas Constitution, *ante* at 436, only an ethereal requirement a search or seizure be "reasonable." This is incorrect. The United States Supreme Court has interpreted the Fourth Amendment as requiring that searches and seizures be pursuant to a warrant, or a legal exception to the warrant requirement. Because art. I, § 9 of the Texas Constitution must provide at least the same protection as the Fourth Amendment to the United States Constitution, including warrants or valid legal exceptions to the warrant requirement, I dissent.

## I.

### The Supremacy Clause

The Supremacy Clause is a clear directive to this Court that we are bound by the United States Constitution and its interpretation by the United States Supreme Court:

> This Constitution, and the Laws of the United States which shall be made in pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

Art. VI, cl. 2. *See also, McCulloch v. Maryland,* 4 Wheat. 316, 427, 4 L.Ed. 579 (1819) (State law in conflict with Federal law is without effect). There are two major Supremacy Clause problems with the majority opinion.

First, it is of no legal consequence whether the Judges on this Court "... find the Supreme Court's statements about a warrant requirement unpersuasive" (*ante* at 436), because we are bound by Supreme Court precedent interpreting the United States Constitution. *State v. Guzman,* 959 S.W.2d 631, 633 (Tex.Cr.App.1998).[2] In a unanimous opinion authored by Justice Stevens, the Supreme Court explained:

> ... The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source.

*Howlett By and Through Howlett v. Rose,* 496 U.S. 356, 371, 110 S.Ct. 2430, 2440, 110 L.Ed.2d 332 (1990).

The second major Supremacy Clause problem presented by the majority opinion is that because the Fourth Amendment and United States Supreme Court are clear there is a warrant requirement, the Texas Constitution must *at least* require the same protection. Pursuant to *Heitman v. State,* 815 S.W.2d 681 (Tex.Cr.App.1991) (discussed *infra*), we are free to interpret the Texas Constitution as bestowing *greater protection* than its federal counterpart, but we cannot interpret it as affording less protection.[3]

---

1. We granted appellant's second ground for review:

    The Court of Appeals erred in failing to find that the trial court erred and abused its discretion in overruling the appellant's motions to suppress evidence because there is no "community care-taking function" exception to the warrant requirement. (Entire record).

2. All emphasis is supplied unless otherwise indicated.

3. Judge Keller disagrees, stating: "The dissent's contention is flawed ... this Court has long recognized its ability to interpret the state constitution as providing less protection than its federal counterpart." *Ante* at 439 (Keller, J. concurring). As precedent for this statement she cites *Welchek v. State,* 93 Tex.Crim. 271, 247 S.W. 524, 529 (Tex.Cr.App.1922); *Richardson v. State,* 865 S.W.2d 944 (Tex.Cr.App.1993); and, Judge Clinton's concurring opinion in *Bauder v. State,* 921 S.W.2d 696, 700 (Tex.Cr.App.1996) (Clinton, J.

## II.

### Warrant Requirement

Appellant makes no argument under the United States Constitution. Instead, he re-concurring)(also relying on *Welchek*). But these citations do not stand for the proposition that this Court can interpret the Texas Constitution as providing *less* protection than its federal counterpart.

Importantly, *Welchek* was decided prior to *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (Extended the Fourth Amendment exclusionary rule to prosecutions in state courts.) Therefore, when *Welchek* was decided, Fourth Amendment guarantees had not yet been extended to the citizenry of Texas in state court proceedings. *See also, Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). Accordingly, it was not necessary for the State Constitution to have an exclusionary rule either. Consequently, when *Welchek* was decided, art. I, § 9 did not provide less protection than the United States Constitution, it simply provided the *same*.

Subsequent to *Welchek*, there has been no need to interpret art. I, § 9 as having an exclusionary rule because our exclusionary rule is provided for by statute. Tex.Code Crim. Proc. Ann. art. 38.23. Commentators explain:

> The Texas legislature did not, however, find the [*Welchek*] court's straightforward reasoning to be palatable as a matter of state policy. As explained in Professor Dawson's article on the Texas statutory exclusionary rule, when the legislature met in 1925, it immediately went to work on 'an ambitious effort to undo *Welcheck* [*Welchek*].' The result was article 727a of the 1925 Code of Criminal Procedure, the predecessor to the current article 38.23.

Matthew W. Paul, *Surmounting the Thorns of Article 38.23: A Proposed Interpretive Guideline for the Texas Statutory Exclusionary Rule*, 46 Baylor L.Rev.309, 316 (Spring 1994).

Matthew Paul also provides insight into the *Welchek* reasoning for the refusal to import the exclusionary rule into Texas constitutional jurisprudence: "... the principle foundation for the court's decision was the *plain language of the Texas Constitution*." *Ibid*. In other words: "... there is no provision in the Texas Constitution which provides that unlawfully seized evidence is inadmissible in criminal trials." *Ibid*. However, the same cannot be said for warrants. Art. I, § 9 provides:

> The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no *warrant* to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

Therefore, art. I, § 9, on its face, clearly intends a warrant requirement and this Court has explained lies exclusively on the protection of the Texas Constitution and argues art. I, § 9 provides greater protection than the Fourth Amendment. The majority disagrees with this contention but does not stop there. The majori-

> ... the primary goal in the interpretation of a constitutional provision is to ascertain and give effect to the apparent intent of the voters who adopted it. "[T]he intention of the framers of a constitution is of but little importance—the real question being, what did the people intend by adopting [the constitutional] language submitted to them?"

*Lanford v. Fourteenth Court of Appeals*, 847 S.W.2d 581, 585(Tex.Cr.App.1993). *See also, Bauder v. State*, 921 S.W.2d at 708 (McCormick, P.J., dissenting).

Judge Keller also cites *Richardson*, 865 S.W.2d at 948. In *Richardson*, we merely cited *Welchek*, not for its actual holding, but as an early example where this Court interpreted its own constitution independent of the federal constitution. In fact, other than the tenuous citation of *Welchek* (explained *supra* as being pre-incorporation of the Fourth Amendment to the States), the *Richardson* opinion makes no mention that this Court is at liberty to interpret the State constitution as affording Texans less protection.

Lastly, Judge Keller relies on Judge Clinton's concurrence in *Bauder* which cites *Welchek* for the position this Court is free to interpret our Constitution as providing less protection. Interestingly, Judge Keller fails to point out that Clinton's position was hotly contested by Judge McCormick:

> I also would use this case as an opportunity to lay *Heitman* to rest for good. For at least 75 years this Court generally has followed the lead of the United States Supreme Court in interpreting similar provisions of our Constitution ... There can be no question that these federal constitutional decisions strike a proper balance between the freedoms all constitutions, state and federal, are intended to secure and legitimate prosecutorial and law enforcement interests. The federalization of this State's procedural and substantive criminal law in the 1950s and 1960s should, as a practical matter, preclude any independent State constitutional analysis ... This point cannot be overemphasized. This Court and the other state courts in the nation since the 1950s and 1960s have had to follow Supreme Court federal constitutional decisions. *Heitman*, in effect, allows us to disagree with the Supreme Court in finding "more protection" for criminals under our State Constitution. *However, we are not free to disagree with the Supreme Court when it comes to finding "less protection" for criminals in our Constitution than that provided by the Federal Constitution.*

*Bauder v. State*, 921 S.W.2d at 706–707 (McCormick, P.J., dissenting). Surprisingly, Judge McCormick joins the majority opinion today.

ty oversteps its bounds by interpreting art. I, § 9 of the Texas Constitution as affording *less* protection than its Federal counterpart:

It is our holding that Article I, Section 9 of the Texas Constitution contains no requirement that a seizure or search be authorized by a warrant, and that a seizure or search that is otherwise reasonable will not be found to be in violation of that section because it was not authorized by a warrant.

*Ante* at 436. The holding is based on the majority's mischaracterization of the Fourth Amendment. Despite the Warrant Clause of the Fourth Amendment and Supreme Court precedent, the majority contends:

... [United States] Supreme Court cases which have held that the Fourth Amendment was intended to impose a warrant requirement are not well founded in historical fact. Insofar as Article I, Section 9 of the Texas Constitution was directed at preventing the same evil that the Fourth Amendment was intended to prevent, the history of the Fourth Amendment informs our interpretation of its meaning.

... by finding a *general requirement of a warrant* to which there are exceptions, the Supreme Court has created a jurisprudential mare's nest. There are so many exceptions to the requirement that most searches and seizures are conducted without warrants and *justified* under one of the exceptions. Such a *model* of the Fourth Amendment not only makes a mockery of the *supposed requirement*, it interferes with a more fine-tuned assessment of the competing interests at stake. For these reasons *we find the*

*Supreme Court's statements about a warrant requirement unpersuasive.*

*Ante* at 435–436. This language is objectionable on many levels.

### A.

First, it is axiomatic that the Fourth Amendment's prohibition against unreasonable searches and seizures is premised on the Warrant Clause. *Almeida–Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *and, Camara v. Municipal Court,* 387 U.S. 523, 528—529, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).[4] As precedent for this maverick position, the majority relies not on the law, but on a series of law review articles and academic treatises which may be instructive but have no precedential authority.[5]

### B.

Because the majority wrongly interprets the Fourth Amendment, its conclusions are fatally flawed. As a basis for its holding, the majority proposes:

... [i]nsofar as Article I, Section 9 of the Texas Constitution was directed at preventing the same evil that the Fourth Amendment was intended to prevent, the history of the Fourth Amendment informs our interpretation of its [art. I, § 9] meaning.

*Ante* at 435–436. The fault in this conclusion lies in the majority's interpretation of Fourth Amendment history.[6] The majority refers to

---

4. The majority classifies this statement as "wrong." *Ante* at 434 n. 1. The authority relied upon for this classification is *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, *Terry* is inapplicable because it merely established a "stop and frisk" exception to the warrant requirement.

5. See, *Ante* at 435–436, fn. 2, 6, 7, & 8 *citing* Akhil Reed Amar, THE CONSTITUTION AND CRIMINAL PROCEDURE 10–13 (1997); Telford Taylor, TWO STUDIES IN CONSTITUTIONAL INTERPRETATION 41 (1969); and, Craig Bradley, *Two Models of the Fourth Amendment,* 83 MICH.L.REV. 1468, 1475 (1985).

6. In regard to this statement, Judge Keller's concurrence posits:

"... Judge Baird contends that the majority misinterprets the Fourth Amendment, but the Fourth Amendment is not an issue in this case, and the majority does not purport to interpret that Amendment."

Ante at 439 (Keller, J. concurring). How can Judge Keller make such a statement when the majority says: "... the history of the Fourth Amendment informs our interpretation of its [art. I, § 9] meaning." *Ante* at 435–436. Clearly the majority premises its position regarding art I, § 9 on its interpretation of the Fourth Amendment:

... Is there such a requirement in Article I, Section 9 [warrant requirement] of the Texas

the intent of the framers of the Fourth Amendment, stating, "... historical research indicates that the Framers' primary, if not sole, concern in drafting the Fourth Amendment was avoiding a repetition of the British colonial practice of issuing general warrants or warrants based on bare suspicion." *Ante*, at 436. The majority then contends that "Supreme Court cases which have held that the Fourth Amendment was intended to impose a warrant requirement are not well founded in historical fact." *Ibid.* The majority relies on legal commentaries for its position but fails to explain why those commentaries are correct and opposing views are incorrect. While the majority offers these commentaries as historical fact, my independent research discovers a myriad of opposing viewpoints, some of which specifically criticize the majority's sources.

Significantly, the majority's reliance on Akhil Reed Amar is suspect. *Ante* at 436 n. 6. One legal scholar has commented that Amar's Fourth Amendment analyses are not only partisan but incomplete and one-sided. Morgan Cloud, *Searching Through History: Searching for History*, 63 U. Chi. L.Rev. 1707, 1739–1743 (1996). Another legal commentator stated:

> For some, the Fourth Amendment is not one of the "respectable" provisions of the

Bill of Rights. Judges may be tempted to "look the other way" when formulating Fourth Amendment rules that hamper discovery and apprehension of criminals. In spite of this temptation, *judges should not rely upon Professor Amar's judgments to narrow the substantive right that is at the core of the Fourth Amendment.* Amar's statements on the history of the Amendment neglect several historic events that undermine his legal conclusions. He provides a facile interpretation of the Amendment's text ... (footnotes omitted).

Tracey Maclin, *The Complexity of the Fourth Amendment: A Historical Review,* 77 B.U.L.Rev. 925, 973–74 (1977).

In fact, other historians have found the intent of the framers to specifically require a warrant. Specifically, the work of William Cuddihy dispels many of Amar's theories. *Id.,* 77 B.U.L.Rev. at 934–939. Justice O'Connor described Cuddihy's work as "one of the most exhaustive analyses of the original meaning of the Fourth Amendment ever undertaken." *Vernonia School District 47J v. Acton,* 515 U.S. 646, 669, 115 S.Ct. 2386, 2398, 132 L.Ed.2d 564 (1995)(O'Connor, J., dissenting)(citing W. Cuddihy, The Fourth Amendment: Origins and Original Meaning (1990)(Ph.D. dissertation at Claremont Graduate School)).[7]

> Constitution? *We shall examine* the text of the Constitution, refer to our prior decisions, consider *the history of the common law,* and consider the *Fourth Amendment jurisprudence.*
> Ante at 435.

7. Justice O'Connor's understanding of the warrant requirement, relying on the preeminent expert on the history of the Fourth Amendment, is far different than the faulty premise of the majority:

> ... what the Framers of the Fourth Amendment most strongly opposed, with limited exceptions ..., were general searches—that is, searches by general warrant, by writ of assistance, by broad statute, or by any other similar authority.... Although, ironically, such warrants, writs, and statutes typically required individualized suspicion, ... such requirements were subjective and largely unenforceable. Accordingly, these various forms of authority led in practice to "virtually unrestrained," and hence "general," searches ... To be sure, the Fourth Amendment, in the Warrant Clause, prohibits by name only searches by general warrants. But that was only because the abus-

es of the general warrant were particularly vivid in the minds of the Framers' generation, and not because the Framers viewed other kinds of general searches as any less unreasonable. "Prohibition of the general warrant was part of a larger scheme to extinguish general searches categorically."

More important, there is no indication in the historical materials that the Framers' opposition to general searches stemmed solely from the fact that they allowed officials to single out individuals for arbitrary reasons, and thus that officials could render them reasonable simply by making sure to extend their search to every house in a given area or to every person in a given group. On the contrary, although general searches were typically arbitrary, they were not invariably so. Some general searches, for example, were of the arguably evenhanded "door-to-door" kind. Indeed, Cuddihy's descriptions of a few blanket searches suggests they may have been considered more worrisome than the typical general search.

Perhaps most telling of all, as reflected in the text of the Warrant Clause, the particular way the Framers chose to curb the abuses of gener-

While I cannot, at this late hour of my tenure on this honorable Court, present a complete discussion of the intent of the framers when drafting the Fourth Amendment, I cannot let go unchallenged the bold assertions proffered by the majority. The majority chooses not to rely on the plain language of the Fourth Amendment, Supreme Court precedent, and our own precedent. Instead, it relies on partisan articles, never acknowledges contrary positions, and works to deny basic civil rights to the inhabitants of Texas.

## III.

### *Heitman v. State*—New Federalism

In *Heitman v. State*, we were presented with the question of whether art. I, § 9 provided greater protection than the Fourth Amendment. We explained that traditionally this Court had treated art. I, § 9 the same as the Fourth Amendment. *Heitman*, 815 S.W.2d at 682–83 *citing Gordon v. State*, 801 S.W.2d 899 (Tex.Cr.App.1990)(plurality); *Johnson v. State*, 803 S.W.2d 272 (Tex.Cr. App.1990); *Bower v. State*, 769 S.W.2d 887 (Tex.Cr.App.1989) (plurality), *cert. denied* 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611; *Eisenhauer v. State*, 754 S.W.2d 159 (Tex.Cr.App.1988) (plurality); *Brown v. State*, 657 S.W.2d 797 (Tex.Cr.App.1983) (Opinion on Remand from the United States Supreme Court); *and Crowell v. State*, 147 Tex.Cr.R. 299, 180 S.W.2d 343 (1944). The *Heitman* Court announced that under our system of federalism we "are free to reject federal holdings *as long as state action does not fall below the minimum standards provided by federal constitutional protections.*" *Id.*, 815 S.W.2d at 682 *citing Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d

730 (1967). *See also, Oregon v. Kennedy*, 456 U.S. 667, 681, 102 S.Ct. 2083, 2092, 72 L.Ed.2d 416, 428 (1982) (state constitutions can provide additional rights for their citizens); *PruneYard Shopping Center v. Robins*, 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980) (state has sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution); *and, LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986)(the federal constitution sets the floor for individual rights; state constitutions establish the ceiling). We held the Texas Constitution may afford greater protection than its federal counterpart. *Heitman*, 815 S.W.2d at 690.[8]

The majority completely misstates *Heitman* as standing for the proposition that this Court can interpret art. I, § 9 as providing *less* protection than the Fourth Amendment:

As the Court of Appeals noted in this case, *Heitman* does not mean that the Texas Constitution cannot be interpreted to give less protection than the federal constitution. It only means that the Texas Constitution will be interpreted independently. See *Hulit v. State*, 947 S.W.2d at 709. Its protections may be lesser, greater, or the same as those of the federal constitution.

*Ante* at 436. As precedent for this statement, the majority relies exclusively on the lower court's opinion in *Hulit*, 947 S.W.2d at 709. Not only is this statement inaccurate and violative of the Federal Supremacy Clause, it is reprehensible for the highest Court in the State of Texas to interpret our constitution in a manner which gives Texans less rights than the rest of the nation. But neither *Heitman* nor its underpinnings sug-

---

al warrants—and by implication, all general searches—was not to impose a novel "even-handedness" requirement; it was to retain the individualized suspicion requirement contained in the typical general warrant, but to make that requirement meaningful and enforceable, for instance, by raising the required level of individualized suspicion to objective probable cause. See U.S. Const., Amdt. 4. So, for example, when the same Congress that proposed the Fourth Amendment authorized duty collectors to search for concealed goods subject to import duties, specific warrants were required for searches on land; but even

for searches at sea, where warrants were impractical and thus not required, Congress nonetheless limited officials to searching only those ships and vessels "in which [a collector] shall have reason to suspect any goods, wares or merchandise subject to duty shall be concealed."

*Id.*, 515 U.S. at 669–71, 115 S.Ct. at 2398–99.

8. Since *Heitman*, we have found greater protection on two occasions. *Autran v. State*, 887 S.W.2d 31 (Tex.Cr.App.1994) (plurality opinion); and, *Richardson v. State*, 865 S.W.2d 944 (Tex. Cr.App.1993).

gest this Court is free to interpret the Texas Constitution as providing less protection or fewer rights than its Federal counterpart. To the contrary, in *Heitman*, we *clearly* explained:

> ... we recognize that *state constitutions cannot subtract from the rights guaranteed by the United States Constitution*, but they can provide additional rights to their citizens. The decisions of the Supreme Court represent the minimum protections which a state must afford its citizens. 'The federal constitution sets the floor for individual rights; state constitutions establish the ceiling.'

*Heitman*, 815 S.W.2d at 690 (internal citation omitted). *See also, Smith v. State*, 898 S.W.2d 838, 846 (Tex.Cr.App.1995); *Autran v. State*, 887 S.W.2d 31 (Tex.Cr.App.1994)(plurality opinion); *and, Richardson v. State*, 865 S.W.2d 944 (Tex.Cr.App.1993). In fact, my research does not reveal a single case where this Court has construed our Constitution as providing less protection or fewer rights than the United States Constitution. The majority fails to cite such a case. What was clear to a majority of this Court in *Heitman* is lost on today's majority.

## IV.

### The "new" New Federalism

"The term 'federalism' in American history and law traditionally referred to the coordinate relationship and distribution of power between the individual states and the national government." Cathleen Herasimchuk, *The New Federalism: Judicial Legislation by the Texas Court of Criminal Appeals*, 68 Tex.L.Rev. 1481, 1485 (1990).[9] When this Court issued *Heitman*, cries of "New Federalism" were heard, as were accusations that *Heitman* was the work of activist judges using the state constitution to expand state constitutional protections. *See, e.g.* Herasimchuk, *supra; and,* Matthew W. Paul and Jeffrey Van Horn, *Heitman v. State: The Question Left Unanswered*, 23 St. Mary's L.J. 929 (1992)(stating that "the ball is in the

court of those who assert that the two provisions [art. I, § 9 and the Fourth Amendment] address discernibly different interests ... [i]n reality, any line of demarcation between the two constitutional provisions in terms of protection of individual rights and restrictions upon governmental authority is illusory."). In explaining the New Federalism, opponents opined that state court judges, unhappy with the Supreme Court's decisions limiting the rights of defendants, would invoke state constitutional protections in order to reach alternate results in conflict with the Supreme Court's decisions.

Today, by holding "that Section 9 of our Bill of Rights does not offer greater protection to the individual than the Fourth Amendment to the United States Constitution, and it may offer less protection," *ante* at 437, the majority is engaging in a "new" New Federalism by diminishing our state constitutional guarantees. The same critics of *Heitman* should be equally outraged with the majority's attempt to interpret state constitutional protections as affording less protection than its federal counterpart, in order to avoid Supreme Court precedent. If providing more rights under our state constitution is judicial activism, surely providing less rights is within that same realm. The condemnation proffered by Herasimchuk over the New Federalism applies in equal force to this Court today:

> Judicial restraint should require judges to forgo legislating their own values and views of fundamental rights into their state's constitutions ... No judge is a "philosopher-king" or "knight-errant" armed with a mandate of legislating his own values through creative constitutional interpretation. (footnotes omitted).

Herasimchuk, 68 Tex.L.Rev. at 1518.

## V.

### Conclusion

First year law students learn that the federal constitution sets the floor for individual rights and state constitutions establish the

---

9. For a complete discussion of New Federalism see *Autran v. State*, 887 S.W.2d 31 (Tex.Cr.App.1994)(plurality opinion).

ceiling. *See,* U.S. Const. art. VI, cl. 2; *Heitman,* 815 S.W.2d at 690; *and, LeCroy v. Hanlon,* 713 S.W.2d at 338. By holding art. I, § 9 does not require that a search or seizure be authorized by a warrant, a majority of this Court no longer reaches for the constitutional ceiling but instead stoops to dig a constitutional basement wherein the Texas Constitution is housed below the floor of the Fourth Amendment. Texans should not have less protections than those enjoyed by the people of the other 49 states.

Believing the majority has not only failed appellant, but every person in Texas, I am duty bound to lodge this dissent.

OVERSTREET, J., joins this opinion.