PD-1228-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/21/2015 5:30:21 PM
Accepted 10/22/2015 1:14:51 PM
ABEL ACOSTA
CLERK

# IN THE COURT
# OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **LAURA DENISE MOORE,** | § | |
| **APPELLANT** | § | |
| | § | |
| **V.** | § | **PD-1228-15** |
| | § | |
| **THE STATE OF TEXAS ,** | § | |
| **APPELLEE** | § | |

§ § §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687   FAX (817) 884-1672
State Bar No. 02760900
ccaappellatealerts@tarrantcountytx.gov

LISA C. MCMINN,
State Prosecuting Attorney

FILED IN
COURT OF CRIMINAL APPEALS

October 22, 2015

ABEL ACOSTA, CLERK

## ORAL ARGUMENT IS REQUESTED

## IDENTITY OF THE PARTIES AND COUNSEL

The State of Texas, represented by the Hon. Sharen Wilson, Tarrant County Criminal District Attorney, prosecutes this appeal. Additionally, representing the State on appeal is the Hon. Tanya S. Dohoney, Assistant Criminal District Attorney and Hon. Debra Windsor, Assistant Criminal District Attorney and Post-Conviction Chief. At trial, the Hon. Caroline Kim, Assistant Criminal District Attorney, represented the prosecution. The State's attorneys' address is Office of the Criminal District Attorney of Tarrant County, Tim Curry Criminal Justice Center, 401 W. Belknap, Fort Worth, Texas 76196-0201.

Appellant, Defendant below, is Laura Denise Moore. Hon. Mimi Coffey and Hon. Joan Cochrane, 4700 Airport Freeway, Fort Worth, Texas, 76102, and represented Appellee at trial. Hon. Richard A. Henderson, 100 Throckmorton Street, Suite 540, Fort Worth, Texas 76102, represents Appellant on appeal.

The Hon. Scott Wisch, judge of the 372nd Judicial District Court of Tarrant County, Texas, presided over Appellant's case. The Second Court of Appeals transferred this cause to the docket of the Court of Appeals for the Eleventh District of Texas. On August 21, 2015, an unpublished

opinion reversing Appellant's conviction issued. *Moore v. State*, No. 11-13-00347-CR, 2015 WL 5192175 (Tex. App.—Eastland Aug. 21, 2015). The panel deciding the case consisted of Chief Justice Wright, Justice Willson, and Justice Bailey.

# SUBJECT INDEX

IDENTITY OF THE PARTIES AND COUNSEL.............................................i

SUBJECT INDEX ...................................................................... iv

INDEX OF AUTHORITIES............................................................ vi

STATEMENT REGARDING ORAL ARGUMENT........................................9

STATEMENT OF THE CASE ..................................................10

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE ...........10

STATEMENT OF FACTS ......................................................10

QUESTIONS PRESENTED FOR REVIEW...............................................12

FIRST QUESTION FOR REVIEW ..........................................................12

Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?

SECOND QUESTION FOR REVIEW .......................................................12

Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?

THIRD QUESTION FOR REVIEW...........................................................12

Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?

ARGUMENT AND AUTHORITIES..........................................................13

CONCLUSION AND PRAYER ...................................................................26

CERTIFICATE OF COMPLIANCE ..........................................................27

CERTIFICATE OF SERVICE ..................................................................27

APPENDIX .............................................................................................A

# INDEX OF AUTHORITIES

## CASES

*Breithaupt v. Abram,*
352 U.S. 432 (1957) ...............................................................22

*Cole v. State,*
454 S.W.3d 89
(Tex. App.—Texarkana 2014, pet. granted)...................... 15

*Davis v. United States,*
___ U.S. ___, 131 S. Ct. 2419 (2011)........................................23–24

*Garcia v. State,*
829 S.W.2d 796 (Tex. Crim. App. 1992) ...........................................25

*Holidy v. State,*
No. 06-13-00261-CR, 2014 WL 1722171
(Tex. App.—Texarkana Apr. 30, 2014, pet. granted ....................... 14

*Hulit v. State,*
982 S.W.2d 431 (Tex. Crim. App. 1998) .................................21–22

*Illinois v. Krull,*
480 U.S. 342 (1987) .................................................................23

*Maryland v. King,*
569 U.S. ___, 133 S. Ct. 1958 (2013).............................................21

*McGee v. State,*
105 S.W.3d 609 (Tex. Crim. App. 2003) .........................................22

*McGruder v. State,*
No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089
(Tex. App.—Waco 2014, pet. granted) ............................................14

*Michigan Dept. of State Police v. Sitz,*
496 U.S. 444 (1990) ......................................................................21

*Miles v. State,*
241 S.W.3d 28 (Tex. Crim. App. 2007) ...........................................16

*Moore v. State,*
No. 11-13-00347-CR, 2015 WL 5192175
(Tex. App.—Fort Worth Aug. 21, 2015).............................................11

*Reeder v. State,*
428 S.W.3d  (Tex. App.—Texarkana 2014, pet. granted) ................14

*Segundo v. State,*
270 S.W.3d 79 (Tex. Crim. App. 2008),
*cert. denied*, 558 U.S. 828 (2009) .............................................21–22

*Skinner v. Railway Labor Executives' Ass'n,*
489 U.S. 602 (1989) ..................................................................18–21

*Smith v. State,*
No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759
(Tex. App.—Corpus Christi 2014, pet. granted) ..............................14

*State v. Daugherty,*
931 S.W.2d 268 (Tex. Crim. App. 1996) ..........................................25

*State v. Villarreal,*
PD-0306-14, ___ S.W.3d ___, 2014 WL 6734178
(Tex. Crim. App. 2014) ..........................................................*passim*

*Tharp v. State,*
935 S.W.2d 157 (Tex. Crim. App. 1996) ..........................................19

*Vernonia School Dist. 47J v. Acton,*
515 U.S. 646 (1995) ........................................................................20

*Weems v. State,*
434 S.W.3d 655
(Tex. App.—San Antonio 2014, pet. granted) ...........................14–15

## STATUTES

TEX. CODE CRIM. PROC. art. 14.04..................................................................18

TEX. CODE CRIM. PROC. art. 18.16..................................................................16

TEX. CODE CRIM. PROC. art. 38.23........................................................24, 26

TEX. PENAL CODE § 1.07(a)(30)...................................................................24

TEX. PENAL CODE § 49.04(a)...............................................................11, 16

TEX. PENAL CODE § 49.09(b)(2) ..........................................................11, 16

TEX. TRANSP. CODE § 724.012(b)........................................................*passim*

TEX. TRANSP. CODE § 724.012(b)(3).............................................................16

TEX. TRANSP. CODE § 524.012(b)(1) .............................................................19

U.S. CONST. amend. IV ................................................................*passim*

## RULES

TEX. R. APP. P. 66.3 .................................................................................15

TEX. R. APP. P. 9.4 ..................................................................................28

# IN THE COURT
# OF CRIMINAL APPEALS OF TEXAS

LAURA DENISE MOORE,           §
    APPELLANT              §
                           §
V.                            §                    PD-1228-15
                           §
THE STATE OF TEXAS ,          §
    APPELLEE               §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF
THE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through her Tarrant County Criminal District Attorney, and respectfully urges this Court to grant discretionary review of this cause in accordance with the rules of appellate procedure.

## STATEMENT REGARDING ORAL ARGUMENT

While the reasonableness of statutory mandatory blood draws merits argument, this Court has already heard oral argument on the instant issues in other cases currently before the Court.  Therefore, the State does not request oral argument in this case.

## STATEMENT OF THE CASE

A jury convicted Appellant of felony driving while intoxicated. TEX. PENAL CODE §§ 49.04(a), 49.09(b)(2).[1] (CR1:6, 142,149-50; RR4:29; RR6:18-19). Subsequently, the trial court sentenced Appellant to ten years' incarceration, probated for five years; the judge also assessed a $1500 fine. (CR1:149-50; RR7:137-41).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Eastland Court of Appeals reversed the trial court in an unpublished opinion authored by Chief Justice Willson. *Moore v. State*, No. 11-13-00347-CR, 2015 WL 5192175 (Tex. App.—Fort Worth Aug. 21, 2015). Rehearing was not sought. The State files this petition, due on October 21, 2015, following one extension.

## STATEMENT OF FACTS

In this felony driving while intoxicated prosecution, officers seized Appellant's blood pursuant to the mandatory blood draw provision contained in Texas' implied-consent law. TEX. TRANSP. CODE §724.012(b).

---

[1] Statutory references cited throughout refer to the current version unless noted.

At the trial court level, the judge denied Appellant's motion to suppress the blood evidence. (CR1:138-40; RR3:13-14). On appeal, Appellant's first point of error relied on the *McNeely* decision. *Missouri v. McNeely*, 569 U.S. ___, 133 S. Ct. 1552 (2013). Appellant also raised two additional jury instruction contentions; they remain unaddressed due to the appellate disposition of the *McNeely* claim. *Moore*, 2014 WL 5192175, at *1.

The Eastland Court of Appeals reversed on the blood draw issue; the appellate court rejected the State's various arguments regarding the propriety of the trial judge's suppression ruling. *Id.* at *1-5. The trial court had denied suppression, entering express findings that:

1) probable cause supported the DWI arrest;
2) the officer possessed reliable information revealing Appellant's two prior DWIs;
3) Appellant refused to provide a breath specimen;
4) Texas' implied consent framework existed for decades and had been enacted due to public policy concerns;
5) the instant officer relied on the blood draw statute instead of seeking a warrant; and
6) under these circumstances, the compelled sample was constitutionally reasonable.

(RR2:24-26,36,43; RR3:8-14). In addition to the ruling on the merits of the *McNeely* point, the interim appellate court rejected the State's argument regarding the inapplicability of the exclusionary rule in this case. *Moore*, 2014 WL 5192175, at *4-5.

## QUESTIONS PRESENTED FOR REVIEW

### FIRST QUESTION FOR REVIEW

**Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE § 724.012(b) violate the Fourth Amendment?**

### SECOND QUESTION FOR REVIEW

**Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?**

### THIRD QUESTION FOR REVIEW

**Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?**

## ARGUMENT AND AUTHORITIES

This Court is in the midst of grappling with the issues presented herein. Whilst a November 2014 decision addressed the merits of the Fourth Amendment issue in one of the several *McNeely*-related cases then pending, what appeared decided remains in flux since the Court granted rehearing last February. *State v. Villarreal*, PD-0306-14, ___ S.W.3d ___, 2014 WL 6734178 (Tex. Crim. App. 2014) (reh'g granted, re-submitted Mar. 18, 2015). Additionally, the appellate milieu includes six other submitted *McNeely*-inspired cases. *Weems v. State*, 434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted) (submitted on arguments Nov. 19, 2014, PD-0635-14); *Reeder v. State*, 428 S.W.3d 930 (Tex. App.—Texarkana 2014, pet. granted) (submitted on arguments Jan. 14, 2015, PD-0601-14); *Smith v. State*, No. 13-11-00694-CR, ___ S.W.3d ___, 2014 WL 5901759 (Tex. App.—Corpus Christi 2014, pet. granted) (submitted Apr. 29, 2015, PD-1615-CR); *McGruder v. State*, No. 10-13-00109-CR, ___ S.W.3d ___, 2014 WL 3973089 (Tex. App.—Waco 2014, pet. granted) (submitted Apr. 15, 2015, PD-1263-14); *Holidy v. State*, No. 06-13-00261-CR, 2014 WL 1722171 (Tex. App.—Texarkana Apr. 30, 2014, pet. granted) (mem. op., not designated for publication) (submitted on arguments Jan.

13

14, 2015, PD-0622-14); *Cole v. State*, 454 S.W.3d 89 (Tex. App.— Texarkana 2014, pet. granted Apr. 22, 2015) (submitted on arguments Sep. 16, 2015, PD-0077-15).

The State's instant petition focuses on two aspects of any *McNeely*-related consequences: *the validity of a statutorily-compelled draw and the invalidity of the exclusionary rule's application.* *Villarreal* only resolved the merits of the mandatory-draw issue, not addressing the applicability of the exclusionary rule. *Villarreal*, 2014 WL 6734178. Nevertheless, the exclusionary rule issue is already before this Court. *See Cole*, 454 S.W.3d at 89 (fourth ground granted); *see also Weems*, 434 S.W.3d at 666 (applying exclusionary rule). In other words, this Court has already granted review on both issues presented herein.

Review should be granted in this case because it involves important questions of law that are have not yet been finally addressed by this Court, matters in conflict in the interim appellate courts, and a misapplication of a Supreme Court decision that has been interpreted as undermining the validity of the Texas implied-consent statute. TEX. R. APP. P. 66.3(a)-(d),(f).

14

## I. Valid, compelled statutory blood draw

The State's appellate stance is in lockstep with that of prosecutors from other counties across the State who have already had cases granted for review on a *McNeely*-related issue. Hence, the State respectfully asks this Court to dispose of the instant case in a manner consistent with the petitions in *Villarreal*, *Weems*, *Reeder*, *Smith*, *McGruder*, *Holidy*, and *Cole*. Here, the officer reasonably relied on an existing, ubiquitous narrowly-focused, reasonable statute to obtain a compelled blood draw. The seizure occurred because the officer possessed probable cause that Appellant's impaired conduct constituted felony DWI. TEX. PENAL CODE §§ 49.04(a), 49.09(b)(2); TEX. TRANSP. CODE § 724.012(b)(3).

In addition, the State differs with *Villarreal's* original-submission decision and further asserts that several important arguments should be considered on the merits.

### A. Codification of Fourth Amendment principles

*Villarreal* failed to consider that the implied-consent statute codified Fourth Amendment principles. For instance, this Court has previously recognized a statutory codification of the exigency exception. *See Miles v. State*, 241 S.W.3d 28, 39–40 n.54 (Tex. Crim. App. 2007) (*citing* TEX. CODE CRIM. PROC. art. 18.16). *McNeely* recognized that every case involving the

15

dissipation of alcohol included *some* exigency. *McNeely*, 133 S. Ct. at 1561, 1568. This ever-present exigency must be considered when assaying the reasonableness of statutory draws.

Combine this static alcohol-evaporation-exigency consideration with the Legislature's clear codification of the gravity-of-the-offense exigency. The implied-consent statute extinguished a defendant's right to refuse where an officer possesses probable cause to believe that certain enumerated, egregious circumstances exist. TEX. TRANSP. CODE § 724.012(b). Defendants only lose their refusal right under carefully circumscribed scenarios involving felonious intoxication-related offenses and/or resultant injuries necessitating hospitalization. *Id.* The statute only applies to the most serious categories of DWI offenders.

This statutory limitation amounts to a codification of an additional recognized exigency unrelated to blood-alcohol dissipation. *Welsh v. Wisconsin* held that the Fourth Amendment authorizes common-sense consideration of the underlying offense's gravity when weighing the existence of an exigency. *Welsh v. Wisconsin*, 466 U.S. 740, 751–52 (1984) (exigency calculations include consideration of a crime's severity). Consideration of a crime's gravity is the essence of reasonableness

16

because the State's interest is greater in a more serious case. *Cf*. T<small>EX.</small> C<small>ODE</small> C<small>RIM.</small> P<small>ROC.</small> art. 14.04 (authorizing warrantless arrests for felonies where an officer did not observe the offense).

Of course, it almost goes without saying that Texas' implied-consent legislation codified Fourth Amendment probable cause requirements. U.S. CONST. amend. IV. Predicate elements of the implied consent statute codify this well-known quantum-of-evidence as a requirement for a compelled search. T<small>EX.</small> T<small>RANSP.</small> C<small>ODE</small> § 724.012(b). The probable cause requirement—in tandem with the codified gravity-of-the-crime and dissipation-of-alcohol exigencies—creates a neutral, non-arbitrary framework authorizing a narrowly-defined seizure from an already-in-custody arrestee. These refinements in the implied-consent statute's structure embrace the essence of Fourth Amendment reasonableness.

B. **Special-needs framework adds to the reasonableness calculation**

The now-withdrawn *Villarreal* decision rejected application of the Supreme Court's special needs doctrine to the mandatory blood draw framework. *Villarreal*, 2014 WL 6734178, at *14–15; *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). However, the Court did not consider that blood drawn pursuant to Chapter 724's mandate

also implicates administrative license revocation [ALR] procedures, a separate regulatory process that focuses on protecting the traveling public by removing offenders from the road. *See* TEX. TRANSP. CODE § 524.012(b)(1) (mandating license suspension based upon BAC).

"The primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Tharp v. State*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996). Such regulation focuses on the government's strong interest in removing intoxicated drivers from the road, just as railroad regulation in *Skinner* sought to increase railway safety by detecting intoxicated employees. *Compare Skinner*, 489 U.S. at 620–21 with *Tharp*, 935 S.W.2d at 159.

Special needs' principles recognize the statute's provision of a neutral, detached vehicle for protecting citizens from impaired drivers and defendants from unfettered discretion. The special-needs exception constitutes another factor to consider in a non-dualistic analysis that renders Texas' compelled-draw framework reasonable.

## C. Erroneous consideration of the "Less Intrusive Means" test

The original *Villarreal* decision considered the ready availability of warrants when rejecting the validity of Texas' mandatory draw statute. *Villarreal*, 2014 WL 6734178, at *18 (finding no compelling need to uphold warrantless, nonconsensual blood searches where warrants are "often readily available"). However, factors such as electronic warrants and the availability of a magistrate shift the focus away from an officer's conduct and, instead, weigh considerations of alternative means. *But see McNeely*, 133 S. Ct. at 1560–64 (Part IIB's alternative means analysis applied when determining whether *per se* exigency existed).

The Supreme Court resoundingly rejected applying less-intrusive-alternative-practices arguments to Fourth Amendment cases not resolved under the exigency exception. *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 663–64 n.3 (1995) (upholding warrantless, random urine screening of athletes after considering diminished privacy, unobtrusiveness, and severity of need, spurning arguments relying on less intrusive alternatives); *Skinner*, 489 U.S. at 629 n.9 (upholding random, suspicionless drug screening of railway employees under special needs exception and discarding less-drastic-and-equally-effective-means

19

arguments).  One footnote in *Skinner* flatly debunks the propriety of considering less-drastic alternatives in scenarios that include warrantless and even suspicionless seizures for toxicological testing, similar to Appellant's facts.  *Id.*

The State maintains that less-restrictive-alternatives logically apply when a seizure's validity rests solely on the temporal factors presenting an exigency; less-drastic, *post-hoc* what-ifs do not apply, however, to reasonableness calculations factoring in other warrantless exceptions. *Villarreal's* analysis mistakenly applied this eschewed construct.

## II.    Implied-consent draws are reasonable

Reasonableness has always been the linchpin of the Fourth Amendment, venerated in the provision's plain language.  U.S. CONST. amend IV; *Hulit v. State*, 982 S.W.2d 431, 435–36, 438 (Tex. Crim. App. 1998).  Discernment of what is "reasonable" requires courts to consider the balance between an individual's privacy and legitimate governmental interests, especially when public safety is of utmost concern.  *See Maryland v. King*, 569 U.S. ___, 133 S. Ct. 1958, 1979 (2013); *Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 455 (1990); *Segundo v. State*, 270 S.W.3d 79 (Tex. Crim. App. 2008), *cert. denied*, 558 U.S. 828 (2009).

20

*Villarreal* viewed the choice between applying a Fourth Amendment exception and consideration of a reasonableness balancing approach as mutually exclusive analytical constructs. The State respectfully believes that this black-white consideration of these two concepts is mistaken, especially in light of the fact that this Court has relied upon the balancing approach to assay reasonableness on similar issues. *See Segundo*, 270 S.W.3d at 96–99; *McGee v. State*, 105 S.W.3d 609 (Tex. Crim. App. 2003); *Hulit*, 982 S.W.2d at 434 n.1, 436.

Again, the statute is reasonable. Years ago, the Supreme Court recognized that a framework requiring a driver's consent was anything but nonsensical. The *Breithaupt* court pointed to then recently adopted implied-consent provisions and wrote:

> It might be a fair assumption that a driver on the highways in obedience to a policy of the State, would consent to have a blood test made as part of a sensible and civilized system protecting himself as well as other citizens not only from the hazards of the road due to drunken driving, but also from some use of dubious lay testimony.

*Breithaupt v. Abram*, 352 U.S. 432, 435 n.2 (1957). The State contends that compelled draws under implied-consent provisions are inherently reasonable when weighing the needs of all involved. Indeed, Fourth Amendment reasonableness underpins the statute. The well-known

21

exceptions—as argued in the myriad cases already before this Court—considered individually and in concert with each other, alongside a balancing of the competing interests, all support the continued viability of Texas' implied-consent framework.

## III.    Exclusionary rule inapplicable and not invoked

Statutory mandatory blood-draws are reasonable.  *But see Villarreal*, 2014 WL 6734178 (opinion on original submission; under re-submission). When the ink dries on *Villarreal* and future *McNeely*-related decisions and if those cases are adverse to the State on the merits, the rules requiring evidence exclusion should not apply to mandatory blood-draw scenarios that occurred prior to the Supreme Court's April 2013 pronouncement.

Federally, the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted with objectively reasonable reliance on (1) a statute, later declared unconstitutional, or (2) binding judicial precedent, subsequently overruled. *Illinois v. Krull*, 480 U.S. 342, 349–57 (1987) (statutes); *Davis v. United States*, ___ U.S. ___, 131 S. Ct. 2419, 2428–34 (2011) (caselaw).

Nor does the Texas exclusionary rule apply.  First, the officer's conduct at the time did not trigger exclusions under subsection (a).

Second, the statutory good faith exception set out in article 38.23(b) is inapplicable in this instance and has been previously misinterpreted. TEX. CODE CRIM. APP. § 38.23(b). Overall, invocation of exclusionary rule principles should hinge on the intent of the statute as a whole, including its history.

As for subsection (a)'s language, a violation at the time of the seizure is the exclusion trigger. When Appellant's blood was drawn, no one credibly questioned the validity of the officer's statutory authority. At the time of the seizure, the officer followed then-existing law. *See* TEX. CODE CRIM. PROC. art. 38.23(a); *see also* TEX. PENAL CODE § 1.07(a)(30) (defining "law" as meaning the state and federal constitution and statutes, in addition to the written opinions of a court of record); *see also Davis*, 131 S. Ct. at 2427–28 ("obtained" applies to unlawfulness at the time of the seizure; exclusion not triggered in an absence of police culpability). Simply put, the instant circumstances do not invoke exclusion.

Additionally, the State avers that Texas jurisprudence mistakenly limits exclusionary rule application; legislators never intended that article 38.23(b)'s warrant provision be the sole exclusionary exception. Instead, Texans were to be afforded the same exclusionary protection coextensive

23

with federal law. *See State v. Daugherty*, 931 S.W.2d 268, 275 & n.1 (Tex. Crim. App. 1996) (McCormick, P.J., concurring and dissenting, joined by White and Keller, JJ.) (citations omitted); *Garcia v. State*, 829 S.W.2d 796, 803 n.1 (Tex. Crim. App. 1992) (Miller, J., concurring, joined by Campbell, J.). Finally, rejecting exclusion where an officer acted with obeisance to existing rules provides incentive for officers to follow the law, fulfilling the overlying purpose of the exclusionary rule.

The Supreme Court mentioned, in *dictum*, the application of the exclusionary rule versus Fourth Amendment violations in a non-blood-draw scenario decided recently. In *Heien*, the Court weighed the validity of an investigatory stop where the officer misunderstood the traffic code provision he relied on to support the stop. *See Heien v. North Carolina*, ___ U.S. ___, 135 S. Ct. 530, 538–39 (2014). The Supreme Court considered the reasonableness of the officer's mistake that lead to the stop and arrest when considering remedies. In so doing, the Court pointed out the myriad decisions finding exclusionary-rule invocation inappropriate where the officer's conduct—valid at the time—was later declared unconstitutional. *Id.* With only one justice dissenting, the Supreme Court's decision pondered the exclusionary rule's limits that had been briefly considered in

24

*Michigan v. DeFillippo.* *Heien*, 135 S. Ct at 538–39; *see generally Michigan v. DeFillippo*, 443 U.S. 31, 3–9 (1979) (suggesting that exclusion might have been appropriate had the provision been "grossly and flagrantly unconstitutional").

Although the *Heien* discussion is merely *dicta*, it reiterates the importance of focusing on the fact that the instant officer's conduct fully complied with mandatory, settled law at the time of Appellant's arrest. *Heien*, 135 S. Ct. at 538–39. *McNeely* and subsequent caselaw questioning implied-consent blood draws came later. Since, no violation occurred at the time of the Appellant's 2011 blood draw, Texas' exclusionary provision does not apply. TEX. CODE CRIM. PROC. art. 38.23(a). And since any legal error by the officer was reasonable, Fourth Amendment cases do not mandate the remedy of exclusion. *See Heien*, 135 S. Ct. at 539.

## CONCLUSION AND PRAYER

Review should be granted and the decision of the Court of Appeals should be reversed. The cause should be remanded to the Court of Appeals to address Appellant's remaining jury-charge-related issues. Ultimately, Appellant's felony DWI with a child passenger conviction should be upheld.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

/s/ Tanya S. Dohoney
TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No. 02760900
ccaappellatealerts@tarrantcountytx.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of TEX. R. APP. P. 9.4 (i) because it contains less than 3900 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1), as computed by Microsoft Word, the computer software used to prepare the document.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY


## CERTIFICATE OF SERVICE

A true copy of the State's brief has been e-served to opposing counsel, the Hon. Richard Henderson, 1999 Throckmorton Street, Suite 540, Fort worth, Texas 76102 at richard@rahenderson.com, on the 21st day of October, 2014.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY

**<u>APPENDIX</u>**


*Moore v. State,*
No. 11-13-00347-CR, 2015 WL 5192175
(Tex. App.—Eastland Aug. 21, 2015)

A

2015 WL 5192175
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

DO NOT PUBLISH. SEE TEX. R. APP. P. 47.2(B).
Court of Appeals of Texas,
Eastland.

Laura Denise Moore, Appellant
v.
The State of Texas, Appellee

No. 11–13–00347–CR    |
Opinion filed August 21, 2015

**On Appeal from the 372nd District Court, Tarrant County, Texas, Trial Court Cause No. 1311911D**

**Attorneys and Law Firms**

Charles M. Mallin, Tanya S. Dohoney, for State of Texas.

Richard A. Henderson, for Laura Denise Moore.

Panel consists of: Wright, C.J., Willson, J., and Bailey, J.

### MEMORANDUM OPINION

MIKE WILLSON, JUSTICE

**\*1** The judgment of the trial court in this case reflects that the jury found Appellant, Laura Denise Moore, guilty of "driving while intoxicated and felony repetition," a third-degree felony.[1] Appellant elected to have the trial court assess punishment, and it assessed Appellant's punishment at confinement for ten years and a $1,500 fine.[2] The trial court suspended the confinement portion of the sentence and placed Appellant on community supervision for a term of five years. We reverse and remand.

[1]    TEX. PENAL CODE ANN. §§ 49.04, 49.09(b) (West Supp.2014).

[2]    *See* PENAL § 12.34 (West 2011).

### I. *The Charged Offense*

The grand jury returned an indictment alleging that Appellant operated a motor vehicle in a public place while intoxicated and that Appellant had twice before been convicted of the offense of driving while intoxicated. A person commits the offense of driving while intoxicated, felony repetition, "if the person is intoxicated while operating a motor vehicle in a public place" and it is shown that "the person has previously been convicted ... two times of any other offense relating to the operating of a motor vehicle while intoxicated." Penal §§ 49.04(a), 49.09(b)(2).

### II. *Issues Presented*

Appellant argues, in her first issue, that the trial court erred when it denied her motion to suppress evidence from the blood draw because her blood was drawn illegally.[3] In her second and third issues, she argues that the trial court erred when it denied her requests for a jury instruction under Article 38.23 of the Texas Code of Criminal Procedure[4] on the validity of the traffic stop and the blood draw. In her final issue, Appellant argues that the trial court erred when it denied her motion for mistrial after the State's witness improperly testified about an alleged extraneous offense.

[3]    Appellant's case is a transfer case from the Second Court of Appeals in Fort Worth, and under Rule 41.3 of the Texas Rules of Appellate Procedure, we apply its precedent unless we determine that our sister court would decline to do so.

[4]    *See* TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).

### III. *Evidence at Trial*

Officer Mark Miller of the Bedford Police Department was on patrol at approximately 4:50 a.m. when he saw Appellant come "very close to failing to yield" to other cars. Officer Miller then saw Appellant abruptly make an illegal left turn from the center lane. He turned on his emergency lights and stopped Appellant. Before he could speak to Appellant, she drove her vehicle out of the parking lot and onto the street. Officer Miller pursued her with both his emergency lights and siren activated, and Appellant abruptly pulled into the parking lot of a shopping center.

Appellant was seated in the driver's seat of her vehicle. Officer Miller approached Appellant. When he reached the

window area where Appellant was seated, he smelled a "moderate odor of alcoholic beverage" and also noticed that Appellant's eyes were "extremely watery." He asked Appellant where she was coming from and where she was going; Appellant answered "home" to each question. Officer Miller described Appellant's speech as "very slurred." Based on his observations, Officer Miller decided to conduct a standardized field sobriety test. The test is composed of three parts. Appellant failed two of the three parts, and based on those results and Officer Miller's observations before he administered the sobriety test, he arrested her for driving while intoxicated. Officer Miller transported Appellant to the jail.

**\*2** Officer Miller also learned from questioning Appellant and from a check of criminal history records, that she had been convicted of driving while intoxicated on two previous occasions. Officer Miller read Appellant the statutory warnings on the DIC–24 form [5] and asked if she would provide him with a breath sample; she refused. Officer Miller testified that, because Appellant had two prior convictions for driving while intoxicated, he was required [6] to obtain a sample of Appellant's blood or breath. Officer Miller secured a blood draw kit, transported Appellant to a local hospital, and had a registered nurse draw a specimen of Appellant's blood. Officer Miller noted that he could have obtained a warrant but that he did not do so because he had arrested Appellant for driving while intoxicated after she already had two prior convictions for that same offense.

[5] A DIC–24 warning is a Department of Public Safety Form that provides the warnings outlined in Section 724.015 of the Texas Transportation Code. *See* TEX. TRANSP. CODE ANN. § 724.015 (West 2011).

[6] *See* TRANSP. § 724.012(b).

# IV. *Analysis*

We will only address Appellant's first issue. As we explain below, the resolution of that issue obviates the need for us to address her remaining issues.

## A. *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). We give great deference to the trial court's findings of historical facts if the

record supports the findings. *Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App.1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche,* 10 S.W.3d at 327. We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman,* 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

## B. *Motion to Suppress*

Appellant argued in her pretrial motion to suppress that the blood draw and the test results were inadmissible because the blood specimen had been illegally drawn. The trial court initially denied her motion. At trial, Appellant re-urged her objection, and the trial court carried the motion through trial and then denied it again. Appellant asserts that the taking of her blood was in violation of her constitutional rights because the blood draw was conducted without a warrant, consent, or any other recognized exception to the warrant requirement.

The State asserts that the blood draw was constitutional because it was reasonable and that, regardless, the exceptions of implied consent and search incident to arrest dispensed with the warrant requirement. Further, the State asserts that, even if the search was not reasonable and no warrant exception applies, the exclusionary rule does not operate to exclude the evidence. Absent a warrant, a search is presumed unreasonable, and the State carries the burden to prove that an exception to the warrant requirement applies. *See Gutierrez v. State,* 221 S.W.3d 680, 685 (Tex.Crim.App.2007). The State stipulated that Appellant's blood was drawn without a warrant. Therefore, the State had the burden to prove an exception to the warrant requirement.

## C. *Implied Consent*

The State first argues that Officer Miller had implied consent to draw Appellant's blood in accordance with Section 724.012 of the Texas Transportation Code. *See* TRANSP. § 724.012. Section 724.012 provides that an officer "shall require the taking of a specimen of the person's breath or blood ... if the officer arrests the person for [DWI] and the person refuses the officer's request to submit to the taking of a specimen voluntarily" and if one of three circumstances is met. *Id.* § 724.012(b). The relevant circumstance is that, "at the time of the arrest, the officer possesses or receives

reliable information from a credible source that the person" has been convicted of driving while intoxicated on two prior occasions. *Id.* § 724.012(b)(3)(B). Section 724.011 provides that, if such a person is arrested for driving while intoxicated, the person is deemed to have consented to the submission of a specimen of breath or blood for analysis to determine the alcohol concentration in the person's body. *Id.* § 724.011.

**\*3** Implied consent under the Texas Transportation Code is not a recognized exception to the warrant requirement, and the State cannot rely on it alone to justify a warrantless blood draw. *See Burks v. State,* 454 S.W.3d 705, 708–09 (Tex.App.— Fort Worth 2015, pet. filed); *Forsyth v. State,* 438 S.W.3d 216, 223 (Tex.App.—Eastland 2014, pet. ref'd); *Douds v. State,* 434 S.W.3d 842, 861 (Tex.App.— Houston [14th Dist.] 2014, pet. granted); *Weems v. State,* 434 S.W.3d 655, 664 (Tex.App.—San Antonio 2014, pet. granted). We note the reasoning and holdings in these cases, and we decline to adopt the State's argument that it had implied consent to draw Appellant's blood without a warrant. We cannot uphold the trial court's ruling on such grounds.

### D. Fourth Amendment Reasonableness

The State next asserts that the mandatory blood draw was a reasonable search under the Fourth Amendment and that a warrant was not required. Under a Fourth Amendment balancing test, we balance the intrusion on the person's Fourth Amendment interests against the promotion of a legitimate interest of the government. *See Schenekl v. State,* 30 S.W.3d 412, 413 (Tex.Crim.App.2000). The Supreme Court has described a blood draw as "a compelled physical intrusion beneath [the accused's] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation." *Missouri v. McNeely,* 133 S.Ct. 1552, 1558 (2013). The Supreme Court continued, "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.' " *Id.* (quoting *Winston v. Lee,* 470 U.S. 753, 760 (1985)). [7] We have considered this issue before, and we have declined "to hold that mandatory blood draws under the Texas Transportation Code are per se reasonable." *Forsyth,* 438 S.W.3d at 224.

[7]     We note that the Court of Criminal Appeals recently addressed, under the Fourth Amendment to the United States Constitution, the constitutionality of warrantless, nonconsensual blood draws under Section 724.012 of the Texas Transportation Code. *See State v. Villarreal,* No. PD–0306–14, 2014 WL 6734178 (Tex.Crim.App.

Nov. 26, 2014). We also note that the Court of Criminal Appeals granted rehearing in *State v. Villarreal* on February 25, 2015.

Officer Miller testified that he relied on the implied consent provision of the Texas Transportation Code as justification for the warrantless blood draw. He also agreed he could have obtained a warrant, but he chose to rely on the statute because Appellant's arrest for driving while intoxicated followed two prior convictions for the same offense. In that context, and considering that mandatory blood draws are not per se reasonable, we cannot uphold the trial court's decision that the warrantless blood draw was reasonable. *Forsyth,* 438 S.W.3d at 224.

### E. Search Incident to Arrest

The State's third argument is that the mandatory blood draw constitutes a lawful search "incident to arrest." The search-incident-to-arrest exception to the warrant requirement applies only if the search is "substantially contemporaneous" with the arrest and is also confined to the area within the immediate control of the suspect. *State v. Granville,* 423 S.W.3d 399, 410 (Tex.Crim.App.2014) (quoting *Vale v. Louisiana,* 399 U.S. 30, 33 (1970)). The purpose of the search is to protect the officer, prevent an escape, or protect the loss or destruction of evidence. *Id.* at 410. Therefore, when a search is not sufficiently close in time or place to the arrest, then the search-incident-to-arrest exception is not normally justified. *Id.* Furthermore, the exception is usually applied to an "active attempt by a defendant or his associates to conceal or destroy evidence upon arrest." *Riley v. California,* 134 S.Ct. 2473, 2486 (2014).

**\*4** Appellant's blood was drawn at a hospital after Appellant had been arrested and transported to the jail and then to the hospital. Under these facts, we cannot say that officer safety or prevention of escape was implicated. As to the argument that the blood draw was necessary to protect the destruction of evidence, we cannot say that the natural dissipation of alcohol in the blood constitutes an "active attempt ... to conceal or destroy evidence." *Id.* Based upon the rationale of the searchincident-to-arrest exception to the warrant requirement and upon the fact that the search was not close in time or place to the arrest, we hold that such an exception is not applicable in this case to support the warrantless blood draw.

### F. Exclusionary Rule

The State's final argument is that, even if the blood draw was unlawful, the Texas exclusionary rule does not apply

because Officer Miller followed an existing statute that had not been held unconstitutional when he arranged for the warrantless blood draw. We disagree with the State's contention. Article 38.23 of the Texas Code of Criminal Procedure, the Texas exclusionary rule, states, "No evidence obtained by an officer ... in violation of any provisions of the Constitution or laws of [either Texas or the United States], shall be admitted in evidence against the accused on the trial of any criminal case." CRIM. PROC. art. 38.23(a).

The statute also provides an exception to the exclusionary rule, but "only when an officer relies in good faith *upon a warrant* issued by a neutral magistrate based on probable cause." *Weems,* 434 S.W.3d at 666–67 (citing CRIM. PROC. art. 38.23(b)). There is no exception to the Texas exclusionary rule for good faith reliance on a statute. *Burks,* 454 S.W.3d at 709; *Forsyth,* 438 S.W.3d at 224; *Douds,* 434 S.W.3d at 861; *Weems,* 434 S.W.3d at 666–67. Officer Miller did not obtain a warrant, and no exception to the exclusionary rule applies. And nothing in Section 724.012 of the Transportation Code instructs an officer to take a suspect's blood without a warrant or provides a valid exception to the warrant requirement of the Fourth Amendment. *See* TRANSP. § 724.012; *see also Forsyth,* 438 S.W.3d at 224–25. Thus, the evidence should have been excluded. We sustain Appellant's first issue.

### G. Rule 44.2(a) Harm Analysis

Because the warrantless mandatory blood draw violated Appellant's rights under the Fourth Amendment, we must reverse the judgment unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX.R.APP. P. 44.2(a); *Weems,* 434 S.W.3d at 667. The jury was instructed as follows:

"Intoxicated" means:

> (A) not having the normal use of one's mental or physical faculties by reason of the introduction of alcohol into the body; OR

> (B) having an alcohol concentration of 0.08 or more.

Officer Miller testified that he stopped Appellant because she came very close to failing to yield to other cars and then made an illegal left turn from the center lane. Officer Miller stopped Appellant, but before he could speak to her, she drove away. Officer Miller stopped her again when she pulled into a parking lot at a shopping center. He spoke to her and noticed a moderate odor of alcohol. Officer Miller said Appellant's eyes were watery and her speech was very slurred. He conducted a field sobriety test in three parts. Appellant failed two parts, and Officer Miller arrested her.

At the jail, Appellant refused to take a breath test. Subsequently, her blood was taken by a nurse, who handed the blood samples to Officer Miller. Officer Miller placed them in evidence envelopes and put them in a refrigerated locker in a secure location at the jail. The samples were then taken to the Integrated Forensic Laboratories where forensic scientist Aubrey Norberg worked. Norberg tested the blood samples from Appellant and testified that Appellant's blood alcohol concentration (BAC) was 0.16 grams of ethyl alcohol per 100 milliliters of whole blood. The State emphasized this evidence during trial. After a review of the record, we cannot say beyond a reasonable doubt that the blood sample evidence did not contribute to Appellant's conviction. *See* Tex.R.App. P. 44.2(a); *Weems,* 434 S.W.3d at 667; *see also Forsyth,* 438 S.W.3d at 225.

### V. *Conclusion*

**\*5** We hold that the trial court erred when it denied Appellant's motion to suppress the evidence from the blood draw. In light of that holding, we need not address Appellant's other issues.

### VI. *This Court's Ruling*

We reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.

**All Citations**

Not Reported in S.W.3d, 2015 WL 5192175

---

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.